KUSHLER *v.* WEBER.

1. CORPORATIONS—DEEDS—EJECTMENT—TITLE.
    No title to land was conveyed by a resolution of the board of directors of the holder of the fee, a corporation, to sell the land for a given consideration, authorizing the officers to sign the proper deeds of conveyance, which, however, were not shown to have been executed.

2. VENDOR AND PURCHASER—HOLDER IN DUE COURSE—POSSESSION —NOTICE.
    Notice of the claim of a party in possession of land is sufficiently shown by the existence of a barn standing on the strip that was, the subject of dispute.

3. DEEDS—DESCRIPTION—QUANTITY.
    Where plaintiff, in ejectment, claimed a parcel of land described in the declaration, by virtue of a deed of the east five acres of land, and defendant claimed title under a deed transferring the westerly 75 acres, neither deed including the strip in controversy between plaintiff and defendant 57 feet wide, and plaintiff did not show any conveyance to him of the intervening parcel, although he obtained quitclaim deeds of the persons who had occupied this strip, plaintiff was not entitled to recover: the rule that plaintiff must recover on the strength of his own title, not on the weakness of the defendant's, is applicable to the case.[1]

---

[1] On the question of the general rule that plaintiff must recover, if at all, on the strength of his own title, see note in 18 L. R. A. 781.

Error to Oakland; Smith, J. Submitted June 22, 1914. (Docket No. 51.) Decided July 25, 1914.

Ejectment by Adolph Kushler and another against John H. Weber and another. Judgment for plaintiffs: defendants bring error. .Reversed.

*Fred A. Baker,* for appellants.

*Davis & Bromley,* for appellees.

STONE, J. This is an action of ejectment to recover a strip of land 57 feet wide near the easterly end of the N. ½ of N. E. ¼ of section 29, in township of Royal Oak, in Oakland county. The plaintiffs and defendants both claim title by mesne conveyances from the Oakland Place Land Company, a corporation, as their common grantor. The said company was possessed of 200 acres of land, more or less, according to government survey, consisting of the W. ¾ of the N. W. ¼ of section 28, and the N. ½ of the N. E. ¼ of section 29.

Upon the trial the plaintiffs introduced in evidence the following instruments:

(1) A deed from the Oakland Place Land Company to William C. Connolly and Anna Connolly, his wife, dated April 6, 1906, and recorded May 1, 1906, in the office of the register of deeds of Oakland county, conveying the easterly 5 acres of the N. ½ of the N. E. ¼ of section 29, the W. ½ of the E. ½ of the N. W. ¼, and the W. ½ of the N. W. ¼ of section 28, all in town 1 north, range 11 east, being 125 acres, more or less, according to United States government survey.

(2) Also a warranty deed from the Oakland Place Land Company to Maurice M. Kenney and' Letitia Kenney, his wife, dated the 6th day of April, 1906, and recorded April 11, 1906, in the office of said reg-

ister of deeds, conveying the westerly 75 acres of the
N. ½ of the N. E. ¼ of section 29, town 1 north,
range 11 east, according to government survey.

In connection with the foregoing deeds, plaintiffs'
counsel introduced in evidence a resolution adopted
by the board of directors of the Oakland Place Land
Company April 26, 1906, reading as follows:

"Resolved, that this company exchange with W. C.
Connolly and others the right to the following de-
scribed property situated in the county of Oakland,
Michigan: The north half of the northeast quarter
of section 29, and the west half of the northwest quar-
ter of section 28, and the west half of the east half
of the northwest quarter of section 28, town 1 north,
range 11 east, being 200 acres, more or less, accord-
ing to government survey, free and clear from in-
cumbrances."

—in exchange for certain property in the city of De-
troit, therein described.

(3) Also a deed from William C. Connolly and
Emma Connolly, his wife, to Frank F. Leska and
Matilda, his wife, and Adolph Kushler and Anna, his
wife, dated the 22d day of October, 1906, and recorded
on the 10th day of November, 1906, in the office of
the said register of deeds, conveying: Commencing
at the northeast corner of the N. E. ¼ of section 29;
thence westerly on westerly line 164 feet; thence
southerly on a line parallel with the east line of said
section 1,331 feet; thence easterly parallel with north
section line 164 feet to the east line of said section;
thence northerly on section line 1,331 feet to place of
beginning, containing five acres.

(4) A deed from Frank Leska and Matilda Leska,
his wife, to Adolph Kushler and Anna Kushler, his
wife, dated August 28, 1912, and recorded September
2, 1913, in said register's office, conveying lot 13 of
the survey and unrecorded plat of the W. ½ of the
N. E. ¼ of section 28, the W. ½ of the E. ½ of the

N. W. ¼ of section 28, and the easterly five acres of the N. ½ of the N. E. ¼ of section 29, all in town 1 north, range 11 east, 125 acres, more or less; the said lot 13 containing 5 acres.

(5) A deed from Letitia Kenney, survivor of herself and husband, Maurice M. Kenney, who died July 7, 1908, to John Henry Weber and Sophia H., his wife, dated March 1, 1911, and recorded May 15, 1911, in said register's office, conveying the westerly 75 acres, more or less, of the N. ½ of the N. E. ¼ of section 29, situated on the south side of 10-mile road and lying west of Woodward avenue.

The controversy in this case arises from the fact that the N. ½ of the N. E. ¼ of section 29 contains more than 80 acres of land. Lying between the plaintiffs' east 5 acres and defendants' west 75 acres there is a strip 57 feet wide and 1,331 feet long containing 1.75 acres, which is the strip in dispute.

The Oakland Place Land Company never executed a deed of the 57-foot strip or any part of it to any one; but its board of directors on May 8, 1906, adopted a resolution as follows:

"Resolved, that this company sell and convey the balance of the Oakland county farm to the Citizens' Savings Bank for twelve thousand ($12,000) dollars, and the officers of this company sign a certain paper to convey said property, and we will take up all the bonds of said company for $12,000."

There was no evidence that the Oakland Place Land Company ever did execute any such conveyance. When the fact of the excess was discovered, plaintiffs' grantors sought to remedy the matter by obtaining from William C. Connolly and wife, in 1913, additional quitclaim deeds covering the disputed strip, and those deeds were offered in evidence. If, however, Connolly and wife had only obtained title to the five acres, they had already deeded that holding, by con-

veyance No. 3, above set forth, and the subsequent conveyances were ineffective.

A deed was also obtained in 1913 of the N. ½ of the N. W. ¼ of section 29, excepting the westerly 75 acres, from the Citizens' Savings Bank to plaintiffs' grantor, but there is no evidence that the Savings Bank had any title to the land. It certainly could get no title by the above resolution.

At the time of the last deed to plaintiffs, the defendants had a barn standing in part on the disputed strip. This was notice of their claim.

Soon after the deeds described as Nos. 1 and 2 were executed, Mr. Connolly employed a surveyor to make a survey of the easterly five acres. He found the northeast corner of section 29 and the quarter post half a mile south, and they were 16½ feet more than half a mile apart; near the middle he found an old fence, a little further south than the exact middle, which he took as the south line of the N. ½, which made the line 20 chains and 15 links, or 1,330 feet, long; on a true 80 acres, 5 acres would be 165 feet wide; the surveyor gave Connolly 164 feet wide. He testified that he made the survey at the request of Mr. Connolly, who claimed to own the land, and the surveyor put a stake at each of the west corners and blazed a tree on the line.

At the close of the evidence, the defendants requested the court to charge the jury as follows:

"*First.* Plaintiff, not having a quitclaim deed from the Oakland Place Land Company, has no title to the strip of land in question, and your verdict should be for the defendants.

"*Second.* Quitclaim deed from the Citizens' Savings Bank, introduced in evidence by the plaintiffs, conveys no title, because the Citizens' Savings Bank at that time had no title to convey.

"*Third.* Said quitclaim deed also conveys no title because the Citizens' Savings Bank at that time was not in possession of the strip of land in question.

"*Fourth.* It appears by the evidence in this case that, after the execution of the deeds April 6, 1906, to William C. Connolly and wife and to Maurice M. Kenney and wife, Mr. A. H. Wilmarth was employed by William C. Connolly to make a survey of the easterly 5 acres on section 29, and he did make a survey and put a stake at each end of the westerly line and made a blaze on a tree on the line, thereby leaving for Mr. Kenney the balance of the N. ½ of the N. E. ¼ of section 29, and that Kenney built a barn within 42 feet of said west line so surveyed and staked out.

"*Fifth.* Under the circumstances, the said survey and staked line must be regarded as the true boundary between the easterly 5 acres and the westerly parcel of land described as the westerly 75 acres in the deeds of April 6, 1906.

"*Sixth.* The quitclaim deeds from William C. Connolly introduced in evidence (two of them) by the plaintiffs convey no title, because William C. Connolly and wife had no title to it."

"*Eighth.* The deed from the Oakland Place Land Company April 6, 1906, to William C. Connolly and wife contained this description:

" 'The easterly five acres of the north half of the northeast quarter of section 29, the west half of the northwest quarter of section 28, and the westerly half of the east one-half of the northwest quarter 28, all in town 1 north, range 11 east, containing 125 acres, more or less, according to government survey.'

"The easterly five acres is a definite description by quantity, and the words 'more or less' must be applied to land on section 28, because it says 'the easterly five acres;' that is absolutely definite; and then it goes on and gives the government subdivision and says 'more or less.'

"*Ninth.* The deed from the Oakland Place Land Company in 1906 to Kenney and wife reads:

" 'The westerly 75 acres of the north half of the northeast quarter of section 29, town 1 north, range 11 east, according to United States government survey.'

"This description is also a definite quantity, but it appears by the undisputed evidence in this case that said north half was more than 20 chains wide; there was an overrun about 10 feet.

"*Tenth.* It appearing that the Oakland Place Land Company on April 6, 1906, executed two deeds, one for the easterly 5 acres and the other for the westerly 75 acres. If this overrun was apportioned between the two deeds, the deed conveying the 5 acres would be entitled to one-sixteenth of the overrun and a deed conveying 75 acres would be entitled to fifteen-sixteenths of the overrun.

"*Eleventh.* If the overrun is not to be apportioned between these two descriptions, as stated above, and descriptions are to be construed as definite descriptions in quantity of only 5 acres in the one deed and 75 acres in the other, then the legal title to the strip between the two parcels is in the Oakland Place Land Company, and, as the plaintiff has no quitclaim deed from the Oakland Place Land Company, the plaintiff cannot recover.

"*Twelfth.* In construing these descriptions, the court is bound by the language used, and, if it was the intention of the Oakland Place Land Company to convey the whole of the N. ½ of this quarter section, they never carried those intentions into effect and never executed a deed that would cover the overrun on a strip between the two parcels of land that is claimed by the plaintiffs in this case."

Each of the foregoing requests was refused, and the court directed a verdict for the plaintiffs. In directing the verdict and speaking of the plaintiffs' title, the court said:

"But, while I am not able to say that it is a very strong title, yet I am of the belief, in an action of ejectment, it is sufficient to prevail."

A verdict and judgment for the plaintiffs were duly entered, and the defendants have brought the case here, assigning errors on the refusal of the court to charge the jury as requested and in directing a verdict for the plaintiffs.

In our opinion the plaintiffs are in no position to recover in the case, and we think that the court erred in directing a verdict in their behalf. The easterly 5 acres is a definite description by quantity, and we

think the words "more or less" must be applied to the land on section 28. The easterly 5 acres are specifically described, and the description must be considered as a quantitative one. This is equally true of the description of the west 75 acres.

In ejectment the · plaintiff must recover, if at all, upon the strength of his own title. We find no evidence in the record that the plaintiffs have ever obtained title to the strip of land in controversy. We think the court should have given defendants' first, second, third, sixth, eighth, ninth, eleventh, and twelfth requests.

The judgment of the court below is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.