KUSHLER *v.* WEBER.

1. DEEDS—DESCRIPTION—QUANTITATIVE—PROPERTY CONVEYED.

Where deeds were executed conveying "the westerly 75 acres" of the north half of the northeast quarter of section 29, and "the easterly 5 acres" thereof, the descriptions must be considered as quantitative, and any excess over 80 acres contained in said north half of the northeast quarter of section 29 was not conveyed.

2. EJECTMENT—GENERAL ISSUE—DEFENSES AVAILABLE.

In ejectment, under section 16, chap. 29, Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 13183), the defense that a deed is void is available under plea of the general issue, notwithstanding Circuit Court Rule No. 23.

3. JOINT-STOCK COMPANIES—DISSOLUTION—STATUTES.

Unless the provisions of the statute (2 Comp. Laws 1915, §§ 7957, 7958) in regard to dissolution of partnership associations were complied with, there was no legal dissolution of a partnership association.

4. SAME—EVIDENCE—PROOF.

Introduction in evidence of a certified copy of the notice of dissolution on file in the office of the secretary of State, *held,* insufficient proof of legal dissolution.

5. TRIAL—EVIDENCE—DOCUMENTARY EVIDENCE—EXCLUSION.

A paper does not appear to be in evidence where the court refused to permit defendant's counsel to introduce it until plaintiff had finished his side of the case, and apparently no further effort was made to have it received.

6. JOINT-STOCK COMPANIES—DISSOLUTION—TITLE TO LAND AFTER DISSOLUTION.

If a partnership association was properly and legally dissolved, the title to a strip of land owned by it thereby vested in the members in proportion to their respective interests.

7. SAME—DEEDS—EXECUTION BY MEMBERS.

A deed to a strip of land executed by both a partnership association and all the persons who were members thereof at the time of its alleged dissolution passed title whether it was legally dissolved or not.

8. EJECTMENT—IMPROVEMENTS—LIMITATION—EVIDENCE—STATUTES.
   In ejectment, evidence of occupation for six years, or for
   less than six years under color of title, entitling defend-
   ants to recover for improvements under 3 Comp. Laws
   1915, § 13211, *held*, insufficient.

9. SAME—RECOVERY FOR IMPROVEMENTS.
   Defendants were not entitled to recover the value of alleged
   improvements, where the evidence showed that because
   of their location and inability to use them they were a
   detriment rather than a benefit.

Error to Oakland; Smith, J. Submitted January
7, 1919. (Docket No. 5.) Decided April 3, 1919.

Ejectment by Adolph Kushler and another against
John H. Weber and another. Judgment for plaintiffs
on a directed verdict. Defendants bring error. Af-
firmed.

*Fred A. Baker (John H. Patterson,* of counsel), for
appellants.

*Peter B. Bromley,* for appellees.

In April, 1906, the Oakland Place Land Company,
Limited (a limited partnership association), was the
owner of the north ½ of the northeast ¼ of section
29, in town 1 north, range 11 east, being the township
of Royal Oak in Oakland county. On April 6, 1906,
the said company executed two deeds, one to Maurice
M. Kenney and wife, conveying the westerly 75 acres
of said land, and the other to William C. Connolly and
wife, conveying the easterly 5 acres thereof. It was
subsequently discovered that the north ½ of the north-
east ¼ of section 29 contained about one and three-
quarters acres more than the 80 acres it was supposed
to contain. The defendants in this suit, who had be-
come the owners of the 75-acre parcel by mesne con-
veyance, held possession of this 1¾-acre strip under

a claim of title, and the plaintiffs herein, then the owners of the 5-acre parcel by mesne conveyances, brought an action of ejectment against them to recover said strip of land, and obtained judgment under a directed verdict. The matter having been brought before this court on appeal (See *Kushler* v. *Weber*, 182 Mich. 224), the judgment was reversed and a new trial ordered. Before a second trial was had, however, plaintiffs discontinued the suit, and after obtaining some further conveyances, commenced a new action of ejectment against the same defendants for the recovery of the same strip of land, and it is this case which is now before us on writ of error from judgment obtained by plaintiffs on a directed verdict.

Upon the trial of this case, the plaintiffs introduced in evidence the following instruments:

1. Warranty deed by The Citizens' Savings Bank of Detroit, Michigan, to Mark B. Stevens, dated May 6, 1897, recorded May 14, 1897, conveying the north half of the northeast quarter of section 29, town 1 north, range 11 east, and other land.

2. Warranty deed by Mark B. Stevens and wife to The Oakland Place Land Company, Limited, dated June 28, 1898, recorded June 30, 1898, conveying the north half of the northeast quarter of section 29, town 1 north, range 11 east, and other land.

3. Warranty deed by The Oakland Place Land Company, Limited, to William C. Connolly and Emma Connolly, his wife, dated April 6, 1906, recorded May 1, 1908, conveying the easterly 5 acres of the north half of the northeast quarter of section 29, town 1 north, range 11 east, and other land.

4. Quitclaim deed by The Oakland Place Land Company, Limited, Margaret G. Jewell, as widow and residuary legatee and devisee under the last will and testament of William F. Jewell, deceased, Mark B. Stevens and George S. Field, individually and as members of the Oakland Place Land Company, Limited, and Emily G. Stevens, wife of Mark B. Stevens, and

Amy E. Field, wife of George S. Field, to The Citizens' Savings Bank, of Detroit, Michigan, dated October 22, 1915, recorded November 27, 1915, conveying the north half of the northeast quarter, excepting the westerly 75 acres thereof, of section 29, town 1 north, of range 11 east.  This deed contains a recital that it is made in pursuance of a resolution adopted by the Oakland Place Land Company, Limited, by its board of directors, on May 9, 1906.

5. Quitclaim deed by The Citizens' Savings Bank, of Detroit, Michigan, to Adolph Kushler and Anna Kushler, his wife, dated October 23, 1915, recorded November 27, 1915, conveying the north half of the northeast quarter, excepting the westerly 75 acres thereof, of section 29, town 1 north, of range 11 east.

6. Quitclaim deed by William C. Connolly and Emma Connolly, his wife, to Adolph Kushler and Anna Kushler, his wife, dated January 5, 1916, recorded January 10, 1916, conveying the north half of the northeast quarter, excepting the westerly 75 acres thereof, of section 29, town 1 north, of range 11 east.

7. Warranty deed by The Oakland Place Land Company, Limited, to Maurice M. Kenney and Letitia Kenney, his wife, dated April 6, 1906, recorded April 11, 1906, conveying the westerly 75 acres of the north half of the northeast quarter of section 29, township of Royal Oak, Oakland county, Michigan.

8. Warranty deed by Letitia Kenney, survivor of herself and Maurice M. Kenney, to John H. Weber and Sophia Weber, his wife, dated March 1, 1911, recorded March 1, 1911, conveying the westerly 75 acres, more or less, of the north half of the northeast quarter of section 29, township of Royal Oak, Oakland county, Michigan.

The resolution referred to in deed numbered 4 above was adopted at a meeting of the directors and stockholders of the Oakland Place Land Company, Limited, held on May 18, 1906, and reads as follows:

"Resolved that this company sell and convey the balance of the Oakland county farm to the Citizens' Savings Bank for $12,000, and that the officers of this company sign all necessary papers to convey certain

property and take up bonds of this company for $12,-000."

Though not introduced by plaintiffs as part of their chain of title, it appears in evidence that plaintiffs had obtained title to the easterly five acres of the north half of the northeast quarter of section 29 as early as August 28, 1912, by means of the following conveyances:

(a) Deed from William C. Connolly and Emma Connolly, his wife, to Frank F. Leska and Matilda, his wife, and Adolph Kushler and Anna, his wife, dated October 22, 1906, recorded November 10, 1906, conveying land commencing at the northeast corner of the northeast quarter of section 29, town 1 north, range 11 east; thence westerly on the section line 164 feet; thence southerly on a line parallel with the east line of said section, 1,331 feet; thence easterly parallel with the north section line 164 feet to the east line of said section; thence northerly on the section line, 1,331 feet to the place of beginning, containing 5 acres.

(b) Deed from Frank Leska and Matilda Leska, his wife, to Adolph Kushler and Anna Kushler, his wife, dated August 28, 1912, recorded September 2, 1913, conveying lot 13 of the survey and unrecorded plat of the west half of the northeast quarter of section 28, the west half of the east half of the northwest quarter of section 28, and the easterly 5 acres of the north half of the northeast quarter of section 29, all in town 1 north, range 11 east, 125 acres more or less; the said lot 13 containing 5 acres.

KUHN, J. (after stating the facts). Counsel for appellants ask for a reversal of the judgment in this case, on the following grounds:

(1) That the Oakland Place Land Company, Limited, in the transaction evidenced by its deeds of April 6, 1906, to the Connollys and the Kenneys respectively (Nos. 3 and 7 above), did not intend to retain, and did not in fact retain title to any portion of the north half of the northeast quarter of section 29, but that, under the descriptions used in said deeds, construed

in the light of the understanding· of all the parties and of the surrounding circumstances, the excess of the land over 80 acres should be apportioned between the two parcels thereby conveyed, 5/80 to the one and 75/80 to the other. That, therefore, the company's deed of· October ·22, 1915, to the Citizens' Savings Bank, of Detroit, Michigan, and the deed by the bank to plaintiffs, conveyed nothing.

(2) That the deed of October 22, 1915, by the Oakland Place Land Company, Limited, to the Citizens' Savings Bank was insufficient to pass any title or interest, because the said company had been dissolved nearly seven years prior to the date of said deed, and it appears from the resolution of dissolution that the company then had no property and assets to distribute or dispose of.

1. The first of these questions was decided adversely to appellants' contention in *Kushler* v. *Weber*, 182 Mich. 224, where we said, at page 230:

"The easterly 5 acres is a definite description by quantity, and we think the words 'more or less' must be applied to the land on section 28. The easterly 5 acres are specifically described, and the description must be considered as a quantitative one. This is equally true of the description of the west 75 acres."

No title, therefore, to the disputed strip, or any portion of it, passed from the Oakland Place Land Company, Limited, by either of its two deeds of April 6, 1906, conveying the 5-acre parcel and the 75-acre parcel respectively (Nos. 3 and 7 above).

2. In this suit, however, plaintiffs, by virtue of the deed of the Oakland Place Land Company, Limited, and others, to the Citizens' Savings Bank and the deed of said bank to plaintiffs, dated respectively October 22 and October 23, 1915 (Nos. 4 and 5 above), have shown a record title to the strip of land in question, and unless appellants' second contention is well founded, the judgment of the court below must be affirmed.

Counsel for appellees contends that the defendants should have given special notice of the affirmative defense that the deed of the Oakland Place Land Company, Limited, to the bank was void, because of the provisions of Circuit Court Rule No. 23, § 2. As an answer to this contention it is only necessary to call attention to the fact that this is an action of ejectment, and under section 16 of chapter 29 of Act No. 314, Public Acts of 1915 (the judicature act, 3 Comp. Laws 1915, § 13183), this defense might properly be urged under the plea of the general issue.

We do not think the record shows sufficient evidence of the dissolution of the Oakland Place Land Company, Limited. Unless the provisions of the statute in that regard have been complied with, there has been no legal dissolution. The introduction in evidence of a certified copy of the notice of dissolution on file in the office of the secretary of State is not sufficient proof that a dissolution has been legally effected. And even this certified copy does not appear to be in evidence. After the court refused to permit defendants' counsel to introduce it until plaintiffs had finished their side of the case, apparently no further effort was made to have it received in evidence. The only other reference to a dissolution which we are able to find in the record is a statement by Mr. Frank F. Tillotson, former cashier of the Citizens' Savings Bank (but not a member of the Oakland Place Land Company, Limited) in the following words:

· "The Oakland Place Land Company sold to the Citizens' Bank, just prior to the time they dissolved and went out of business, all their remaining assets," etc.,

—but upon being asked:

"Do you know of your own knowledge after the passage of this resolution, a certified copy of which you have seen, that there was ever any notice published

in the newspaper in the city of Detroit of the dissolution of the copartnership?"

—he replied:

"I do not know whether there was or not. Mr. Field, who was secretary of the company, is the attorney and also the bank's attorney, and all legal matters were left to him."

No further effort appears to have been made to throw light on this question. The provisions of the statute relative to voluntary dissolutions of partnership associations limited (2 Comp. Laws 1915, §§ 7957, 7958) are as follows:

"(7957) SEC. 8. Such association may be dissolved:
"*First,* * * *
"*Second,* Whenever by vote of a majority in number and value of interest it shall be so determined, and notice of such winding up shall be given by publication in two newspapers published in the proper city or county at least four consecutive weeks; and immediately upon the commencement of said advertising said association shall cease to carry on its business, except so far as may be required for the beneficial winding up thereof.

"(7958) SEC. 9. When any such partnership association shall be dissolved by the voluntary action thereof, its property shall be applied and distributed as follows:
"*First,* To the payment of all debts for wages of labor;
"*Second,* To the satisfaction of its other liabilities and indebtedness;
"*Third,* After payment thereof the same shall be distributed to and among the members thereof, in proportion to their respective interests, in the following manner:
"*Fourth,* Three liquidating trustees shall be elected by the members of the association, who shall have full power and authority to wind up the concern, and distribute the net assets thereof among the members, under the direction of the circuit court of the proper county."

If the association was properly and legally dissolved, the title to the strip of land in question thereby vested in the persons who were members at the time of dissolution in proportion to their respective interests. If the association had not been legally dissolved, the title remained in the association. The deed of October 22, 1915, to the Citizens' Savings Bank was executed by both the Oakland Place Land Company, Limited, and all the persons who were members thereof at the time of the alleged dissolution. We think the deed was sufficient to pass the title in either event.

3. The other assignments of error, which counsel for defendants say in their brief they insist upon, but do not argue, relate to the failure of the charge of the court to instruct the jury with reference to the increased value of the premises by reason of the construction of buildings and other improvements thereon. Section 44, chapter 29 of the judicature act (3 Comp. Laws 1915, § 13211), provides as follows:

"Whenever in any action of ejectment the plaintiff, or any one or more of the plaintiffs, if there be more than one, shall recover, or recover any undivided interest in the premises, the defendant or defendants shall be allowed compensation in proportion to such recovery for buildings and improvements on the premises recovered, erected, or made by him or them, by any person through whom he or they claim title to the extent that such buildings and improvements shall increase the present value of said premises: *Provided*, The defendant or defendants, or the person through whom he or they claim title, shall have been in the actual, peaceable occupation of the premises recovered, for six years before the commencement of the action: Or *Provided*, The same shall have been so occupied for a less time than six years under a color of title and in good faith."

It is apparent, therefore, that it was incumbent upon the defendants to show, in order to avail themselves of the value of any improvements, that defendants

either were in actual, peaceable occupation of the premises for the period of six years, or upward, before the commencement of the action, or that they occupied it for a less period under color of title and in good faith. The declaration in the first suit between these parties was filed on September 8, 1913, and the record discloses that the first improvement was made upon the premises either in 1907 or 1908, the date not being fixed positively, and it is impossible to tell whether it was before September 8, 1907, or not. This improvement consisted of a small part of a barn extending into the disputed strip. We are satisfied from a reading of this record that there was not sufficient evidence to have warranted the submission to the jury of the question whether or not the property was occupied for six years before the commencement of the suit, nor are we of the opinion that the defendants had any color of title to the disputed strip. Moreover, we think it conclusively shown that the alleged improvements were a damage and a detriment to the property rather than a benefit, because of their location and the inability to use them, and that therefore the improvements added nothing to the value of the land. We are therefore of the opinion that no prejudicial error was committed by the court in failing to give the requests as presented with reference to this phase of the case.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.