OLIN *v* HENDERSON.[1]

1. BOUNDARIES—FIELD-NOTES—EJECTMENT.

The field-notes of a United States surveyor upon his survey of the rear concession of a private claim are admissible in evidence in ejectment for land claimed to be a part of the front concession, where the issue is the location of the boundary line between the two concessions, in connection with the field-notes of the front concession by the same surveyor, for the purpose of showing the location of the witness trees, and the fact that, by establishing the line as claimed by the plaintiff, as owner of the front concession, the defendant, as owner of the rear concession, has all the land his patent calls for.

2. SAME—LOCATION OF MONUMENTS—RESURVEY—EVIDENCE.

One who resurveyed a private claim, bounded in front by a river, testified that, finding no old monument near the river, he started from a fence, which he knew to be "very nearly" correct, and found witness trees on the line between the front and rear concessions ( the location of which line was the matter in dispute ) at a distance of 46 feet less than indicated in the government survey, which discrepancy, he explained, might be due to the varying height of the water in the river. His survey agreed with the government survey in the number of acres in the rear concession. The jury were instructed that the value of the survey as evidence depended upon the correct location of the starting point. *Held*, that the testimony was not incompetent, nor, in view of the charge, misleading.

3. SAME—HEARSAY.

Testimony of defendant in ejectment concerning statements made by a United States surveyor when defendant built a fence on what he claimed to be the boundary line of his concession, the true location of which line is the matter in issue, is inadmissible, as hearsay, where plaintiff's grantor, the owner of the adjoining concession, was not present at the interview

---

[1] Rehearing denied July 11, 1899.

| 120 | $\overline{149}$ |
| 145 | 681 |
| 120 | 149 |
| f152 | ¹639 |
| 120 | 149 |
| 154 | ⁸532 |

4. EVIDENCE—FACTS EQUALLY WITHIN DECEDENT'S KNOWLEDGE—
GRANTEE OF HEIR.

   3 How. Stat. § 7545, as amended by Act No. 121, Pub. Acts
   1895, providing that in a suit prosecuted or defended by the
   heirs, assigns, devisees, legatees, or personal representatives of
   a deceased person, the opposite party shall be incompetent to
   testify to facts equally within decedent's knowledge, excludes
   such testimony where the suit is prosecuted by a remote
   grantee of decedent's heirs.

5. EJECTMENT—RIGHT TO MAINTAIN.

   One in possession of land under an executory contract of sale
   may maintain ejectment against a trespasser.

6. SAME — PROOF OF POSSESSION — APPEAL — OBJECTIONS NOT
RAISED BELOW.

   Where defendant in ejectment permits the trial to proceed
   upon an evident understanding that plaintiff's possession
   under a contract giving the right to such possession is con-
   ceded, his objection, raised for the first time on appeal, that
   the proof of possession is insufficient, will not be considered.

7. SAME—DECLARATION—ALLEGATION OF TITLE.

   Under 2 How. Stat. § 7790, providing that plaintiff in eject-
   ment must show a valid subsisting interest in the premises,
   and the right to recover the possession thereof, and section
   7797, providing that the declaration shall state whether plain-
   tiff claims in fee, or for life, or for a term of years, or other-
   wise, it is sufficient for one in possession under an executory
   contract of sale to allege title in fee, without setting up the
   contract.

8. BOUNDARIES—AGREEMENT AND ACQUIESCENCE.

   To establish a boundary line by agreement and acquiescence,
   not only must there have been an express agreement, and
   monuments erected and acquiesced in, but a doubt or con-
   troversy must have existed as to the true line; otherwise, the
   statute ( 2 How. Stat. § 6179) prohibiting the conveyance of
   real estate by parol renders the agreement inoperative.

Error to Wayne; Hosmer, J.    Submitted January 27,
1899.    Decided May 9, 1899.

Ejectment by Rollin C. Olin and Oscar Le Seure against
Thomas Henderson.    From a judgment for plaintiffs, de-
fendant brings error.    Affirmed.

This is an action of ejectment for the recovery of "a parcel of land, 19 rods wide, at the rear of the front concession of private claim No. 259, and being the southerly part of said front concession," containing 2½ acres, which plaintiffs claim in fee.   The situation will appear from the following plat:

The land in dispute is marked with a cross.

Plaintiffs introduced the original patent for private claim 259, and deeds which brought the title to Francis F. Palms and others.   These parties gave a land contract for the sale of this front concession to Edward T. Adams, trustee, which was by him assigned to plaintiffs, July 28, 1892. This contract, among other descriptions, covers "all that part of the front concession of said private claim 259 lying southwesterly of the road crossing about the center of the

length of said front concession of said private claim 259, said parcel to include all lands from the center of said road or highway to the extreme rear of said front concession, and containing 35 acres more or less, except a strip owned or occupied by the Wabash, St. Louis & Pacific Railway Company." This was the ordinary land contract, and contained the following provision in regard to possession:

"In the event of said second party taking or assuming possession of said premises, in case of such default, said first parties may treat him as a tenant at will, and take the usual summary proceedings before a circuit court commissioner or justice of the peace to eject and remove him from such premises."

The plea was the general issue. The dispute arises over the boundary line between the front and rear concessions.

Defendant's contention is thus stated by his counsel:

"(1) That neither plaintiffs nor their grantors made or proved a claim to anything beyond the rear line of the front concession, which is only 80 acres from the border of the river, and that, by going up to defendant's fence, they had already gone beyond their said rear line, and had more land than they even claimed, and the disputed strip was no part of their tract. * * *

"(2) That the contract gives plaintiffs no title in fee, which is what their declaration claims, but is simply an agreement to sell, which provides that, under certain circumstances, they may become tenants at will of the owners; that it gives them no right of possession; and that, as a matter of fact, it does not appear that they have ever taken possession under it of any part of the front concession, and therefore that they have never even become such tenants.

"(3) That neither plaintiffs nor their grantors have ever been in possession of the disputed strip.

"(4) That the testimony of the surveyors shows that they were not governed by the original survey of this land in making their surveys. * * *

"(5) That defendant and those claiming under him had been in the undisturbed possession of that disputed land for more than 15 years, claiming to own it.

"(6) That defendant and Dennis J. Campau, when they were owners of these adjoining pieces of land, had established and agreed upon a line between them, and that it

had been acquiesced in for many years, and was thus made the true line, independently of the fact that it was or was not the true line."

Two questions were submitted to the jury:

(1) Where was the original line?
(2) Has defendant acquired title by adverse possession?

The issue was found in favor of the plaintiffs.

*B. T. Prentis*, for appellant.

*Keena & Lightner*, for appellees.

GRANT, C. J. (*after stating the facts*). 1. Plaintiffs introduced, under objection and exception, the field-notes of the survey of the rear concession. The objection made to this is that it did not tend to show title in the plaintiffs. This survey was made by John F. Monroe, a deputy United States surveyor, in October, 1871, in pursuance of an act of congress. The field-notes of the front concession by the same surveyor were also introduced. The purpose of this was to show the location of the witness trees, and that, by establishing the line as plaintiffs claimed, defendant had all the land his patent called for in Monroe's survey of the concession. This certainly had an important bearing upon the location of the true line, and was admissible for that purpose.

2. A surveyor named Jerome made a survey shortly before the trial. He found no old monument near the river, and started from a fence, which he swears he knew to be very nearly correct. This testimony was objected to, because the surveyor did not start from some monument placed under the original government survey,—citing *Carpenter* v. *Monks*, 81 Mich. 103, and *Jones* v. *Lee*, 77 Mich. 35; but it appears that Jerome found witness trees on the line between the concessions. He, therefore, did find monuments, which were controlling. Starting from this old fence, he made the distance from the border of the river to the witness trees above men-

tioned 46.86 feet less than that in the survey of Mr. Monroe. He testified the difference might be accounted for by the height of the water (the land being low and marshy) when the surveys were made. The defendant's patent called for 78.14 acres. Jerome testified that from the dividing line according to the Monroe survey to the St. Cosme line (the southern boundary) the rear concession contained the same number of acres. The court instructed the jury:

"The only value of a survey as a survey is dependent upon where you believe the original monument to be; and the surveyor has no better knowledge of that — is not presumed to have any better knowledge of that fact — than any gentleman of the jury. It is for you to fix that by the evidence in this case; and the fact that a surveyor, unless he has the original monument to start from, has made a survey, and what he believes or claims to be a property, is no evidence of that property, except as you may find that he has started from the original point."

In view of these facts, we do not think the testimony was incompetent, or that the jury could have been misled into the belief that the old fence near the river, from which Jerome started, was controlling.

In this connection defendant's counsel also urged that it was error not to permit defendant to testify to what Monroe said to him when he built the fence which he now claims to be the dividing line. Plaintiffs' grantor was not present at that interview. The testimony was clearly hearsay, and was properly excluded.

3. Defendant was asked to testify to a conversation between him and Mr. Campau, deceased, in 1873, in regard to the building of this fence. This was excluded, under 3 How. Stat. § 7545, as amended by Act No. 121, Pub. Acts 1895. Counsel sought to defend the admission of this testimony upon the ground that the plaintiffs are not the assignees of Mr. Campau, but are grantees of his heirs several times removed, and that the statute only applies to a case where the property or right was transferred by the deceased in his lifetime. We think the statute is broad

enough to include this case within the beneficent prohibition. This statute was held, in *Lloyd* v. *Hollenback*, 98. Mich. 203, to include the heir. If it includes the heir, for, the same reason it should include the grantee or assignee of the heir. It was also held, in *Ripley* v. *Seligman*, 88 Mich. 189, that the assigns of a deceased person include the grantee of the grantee of the deceased person. The testimony was properly excluded.

4. Error is alleged upon the instruction that the question for the jury was where the true line lay, except there had been a line established by adverse possession. Counsel says: "The question was, Where is the south or rear line of the front concession? There may be a little over two acres between the two pieces which has never been conveyed." There is no evidence to sustain the claim that there was any unconveyed land between the two parcels. The entire land had been surveyed and conveyed, and the sole question related to the boundary line between them.

5. It is urged that plaintiffs showed no title in fee, and therefore could not recover; the precise claim being that the contract under which plaintiffs claim title does not convey the fee, and that, having claimed title in fee, they have failed to make their case. To support this proposition counsel cites *Buell* v. *Irwin*, 24 Mich. 145, *Gamble* v. *Ross*, 88 Mich. 315, and several other authorities. We cannot take the time to analyze those cases. An examination will show that they do not apply to this case. The contract contemplated and permitted possession by the vendees. The trial was evidently conducted upon the understanding that the plaintiffs were in possession under the contract, which evidently gave them the right of possession. Ejectment is a possessory action, and a vendee in such contract, in possession under it, is entitled to maintain ejectment against one who has ousted him from the land. *Covert* v. *Morrison*, 49 Mich. 135. A vendor in a land contract giving the vendee right of possession cannot maintain ejectment until he has in some manner

terminated the contract relation. *Michigan Land & Iron Co.* v. *Thoney*, 89 Mich. 226. The suit having been tried upon the theory that plaintiffs were in possession, and no such objection having been made in the court below, it cannot now be raised. 2 How. Stat. chap. 269, provides for the action of ejectment. Section 7797 provides what the declaration shall state. If the plaintiff is a widow, seeking dower, she must set forth this claim.

"In every other case the plaintiff shall state whether he claims in fee, or whether he claims for his own life, or for the life of another, or for a term of years, or otherwise, specifying such lives or the duration of such term."

Section 7790 provides that, in order to recover, the plaintiff must show "a valid subsisting interest in the premises claimed, and a right to recover the possession thereof, or of some share, interest, or portion thereof." While it is true that the plaintiffs had not the legal title, and therefore did not show title in fee, as alleged in the declaration, yet, under the statute in question, prescribing the contents of the declaration, there is only one requirement, if the statute is strictly followed, under which plaintiffs could bring their action, and that is that they claimed in fee. While plaintiffs might with propriety have fully set out the contract, and possession under it, we are cited to no authorities requiring this to be done. Defendant is not prejudiced or misled. The point is purely technical. We are not, therefore, disposed to reverse the case upon this ground.

6. The court was requested to instruct the jury as follows:

"If the jury believe the testimony of La Prad and Vermette, which is uncontradicted, then Henderson and Dennis J. Campau agreed upon the boundary line at a time when they were adjoining owners. It is undisputed that both the parties acquiesced in the line so established up to the time when Hubert brought his trespass case. These being found to be the facts, the line so established will be considered the true line, provided the acquiescence was for a considerable period, even though it is less than the 15 years required by the statute of limitations."

This presents the most difficult question in the case. In cases of boundary lines it is often difficult to distinguish when the case is within section 6179, 2 How. Stat., prohibiting a conveyance of real estate by parol, etc., and the case where there has been a settlement of the disputed boundary line, acquiesced in by both parties, and where one party or the other, in consequence thereof, has changed conditions.

The testimony upon this point is as follows: La Prad testified that he lived 11 years at one time upon the Henderson farm, and knew Mr. Campau.

"Mr. Campau told me that he was going to mark the line. I have no learning, so it is quite a job for me to keep dates of all those things. It was before I left the Reeves farm, and I left the Reeves farm in 1873. I had a talk with Mr. Campau at that division line. Mr. Campau told me he wanted me to mark that place, or that line; that they were going to establish and call it a division line between them. So he got me to take a brick, or gave me a brick, and I got a spade, and put it down there, and it is there yet, I suppose. He said they had agreed on that; he and Henderson had agreed that that should be the division line. The fence was there at that time."

Vermette testified, in regard to this fence, as follows:

"I don't remember the time it was built, but I seen a new fence built there, which Mr. Campau— At the west side of the fence, at the corner, which, when I came up there with Mr. McDonnell and Mr. Jim Padley, I told the boys, says I, 'I suppose that is in there to tell us to get out of there.' I said, said I, 'I suppose this is what says, "Don't get in that lot."' 'Oh, no!' he says, 'I don't have anything to do with that; it is Mr. Henderson.' I think it is Dennis Campau. I have known him for quite a few years back. I was on the Henderson farm. He was right there on the west side. I think it is the Woodbridge farm, adjoining Henderson. That fence was newly built. I don't know how long it was built, but that was a new fence.

"Q. In what year was that?

"A. I think it was in 1867 or 1868. I won't be positive, but I think it was one of them two years that I went

through with the boys hunting. Well, it must be about 33 or 34 years ago, I think.

"*Q.* What did Mr. Campau say to you?

"*A.* Well, he said the agreement; that is, he concluded, him and Henderson, that was his line, and it would be a good thing for to put in a good landmark there,—a stone or a brick. That is all he told me. I didn't ask no questions whether they were going to put it in. It was none of my business, anyhow, to do so. He said he concluded —him and Henderson—that that was the line of their fences between the two, and a stone or a brick would be a good landmark. He said he agreed with Mr. Henderson that was their line, and the fence was on the right line; it was the right line, and this agreement made that the line, and that it was in the right place as he spoke. He said that that was what he and Henderson had agreed upon."

We think the true principle controlling these questions is stated by Chief Justice CAMPBELL in *Smith* v. *Hamilton*, 20 Mich. 438 (4 Am. Rep. 398). The testimony does not show that there had been any dispute, or even a doubt, between Henderson and Campau, as to the true boundary between them. There must be, not only an express agreement, and monuments erected, which have been acquiesced in, but there must have been a doubt or controversy as to the true line; otherwise, the case comes within the prohibition of the statute. So far as appears upon this record, Henderson and Campau may have had no controversy, nor cared sufficiently at the time to have the matter settled. It may have been agreed to solely for temporary purposes, to separate fields or pastures. We do not think defendant showed sufficient to bring the case within the decisions of this court sustaining boundary lines fixed by agreement and acquiescence. *Cronin* v. *Gore*, 38 Mich. 384; *Manistee Manfg. Co.* v. *Cogswell*, 103 Mich. 605; *Pittsburgh, etc., Iron Co.* v. *Lake Superior Iron Co.*, 118 Mich. 109.

Other objections are raised to the charge of the court which we do not think it important to mention. We find in them no error. The instructions fairly left the question

to the jury on the two points which were involved in the case.

Judgment affirmed.

The other Justices concurred.