PARSONS *v.* BILLS.

1. BOUNDARIES—LINE FENCE—SETTLEMENT OF DISPUTE.
   A line fence, maintained for more than forty years as a section line, cannot be held to have been built by agreement, as a boundary line, where there is no evidence that a dispute existed or a disagreement was settled when it was built.

2. SAME—ADVERSE POSSESSION.
   *Held* that the facts did not establish adverse possession of the land in dispute.

3. SAME—SURVEYS—ANCIENT MONUMENTS.
   A boundary will be considered established by a line fence which remained and was treated as the division fence between two parcels for forty years, by the adjoining proprietors, where the evidence showed that it was so treated by one private survey, and a later survey, showing a different location of the boundary, did not appear from the proofs to have been based on the finding of any original government monuments.

Appeal from Shiawassee; Miner, J. Submitted June 20, 1910. (Docket No. 111.) Decided December 7, 1910.

Bill for an injunction by William P. Parsons against Seward A. Bills and Ida May Bills, to restrain trespass. From a decree for complainant, defendants appeal. Affirmed.

*Seth B. Terry* (*Walsh & Pardee,* of counsel), for complainants.

*Hicks & Doty,* for defendants.

OSTRANDER, J. This suit was brought to have determined the boundary between sections 4 and 5, in town 5 north, of range 4 east. The jurisdiction of the court, which is not questioned, may be sustained upon the ground that defendants are charged with having by stealth, as well as by force, attempted to secure possession of a strip of land, and have built some part of a line fence over on the land complainant claims to own and which he has occupied for about 40 years. The decree appealed from establishes the line in accordance with complainant's contention and theory, and requires defendants to remove the fence built by them to the line so established, and hereafter to maintain the said division fence upon said line. Two surveys of a line are proven and the existence of a division fence, erected and maintained for many years upon a line corresponding with one of said surveys and with complainant's contention. Complainant, relying upon the survey which is favorable to his contention, also advances the theory that the said division fence was established by agreement of adjoining owners, and the further theory that he has acquired, by adverse possession, the title to all land lying west of said line fence.

The evidence of the establishment of a line by agreement and acquiescence is not sufficient to satisfy the rule laid down in *Smith* v. *Hamilton*, 20 Mich. 438 (4 Am. Rep. 398), and approved in *Olin* v. *Henderson*, 120 Mich.

149, 158 (79 N. W. 178).    See, also, *Chapman* v. *Crooks*, 41 Mich. 595 (2 N. W. 924); *Manistee Manfg. Co.* v. *Cogswell*, 103 Mich. 602 (61 N. W. 884).

It appears that complainant purchased and received a conveyance of the E. ½ of the S. E. ¼ of section 5 in the year 1870, immediately occupied it, and has ever since been in possession.    There was then a fence, log and rail, on the east side of the land, running both from the north and from the south to a swamp, through which there was no fence.    Flush with this fence, and in the southeast corner of the land, complainant built his house in 1874.    The W. ½ of the S. W. ¼ of section 4 was then occupied by one Charles Jacobs, who purchased in 1870, lived on the land for a year or two, and then sold it to complainant.    Complainant sold and conveyed it in May, 1876, to Barnum, Dunn and Lee, who conveyed to Straussine in April, 1877, who reconveyed to complainant in January, 1886. This last deed was executed pursuant to a contract for the purchase of the land, made in 1883, in which complainant and one Robert Craig were named as vendees, Craig having assigned his interest to complainant.    Thereafter, in April, 1903, complainant conveyed to defendants, who are husband and wife.    The line fence in question was erected some time between 1864 and 1869.    When complainant conveyed to Barnum and others in 1876, he reserved his house, but not the land on which it stood. This was because the purchasers, or one of them, told him he thought the house was on the line.    Complainant heard, also, that Straussine proposed to make him move his house, but he says this was not the reason for repurchasing the land on section 4 from Straussine.    When complainant conveyed to defendants, he excepted, out of the W. ½ of the S. W. ¼ of section 4, a strip of land next to his house, the particular description being:

"Commencing at the southwest corner of southwest quarter and running thence east twenty-five feet; thence north thirteen rods and five and one-half feet, thence west

twenty-five feet to section line, thence south on section line to place of beginning."

He learned from Mr. Bills, in the autumn of 1904, that he questioned the line indicated by the old fence, and in 1907 or 1908, perhaps in both years, Bills attempted to build, and did build in 1908, a new fence west of the old line fence, beginning at the north line of the land and running 80 rods to the south. This fence at the north end of it is about a rod and a half west of the old line fence, and at the south end is from eight to ten feet west of the old fence. While the original fence was long maintained as a line fence, there is no evidence of a dispute or disagreement settled when it was built, and, although complainant occupied and cultivated the land west of the fence, claiming to own it, adverse possession is not established by the facts.

We are therefore required to examine the record and other evidence of the surveys. There are two, known, respectively, as the "Huggins" and "Mason" survey. Huggins made a survey in 1851, but it is called and treated as a private survey, not recorded. Ezra Mason made a survey of all of section 9 in 1866. In 1880 Huggins made another survey, and one of the points assumed by him to be correctly established was the southwest corner of section 4, evidenced by a stone found in the road. In 1880 Lyman Mason, then county surveyor, made a survey. He assumed that a corner set or rewitnessed by Ezra Mason was correctly established. All of these surveyors are dead, and it is impossible to tell whether any of them found the original government monuments. The Huggins surveys correspond with the line fence. The Mason survey indicates the true section line as being some 27 feet west of the fence at the north line of the land in question, and about 5 feet and 10 inches west of it at the south line. The trouble about both surveys, as showing the true line, is the absence of any established starting point. The question resolves itself into one of probabilities. We dispose of the matter by saying that it is quite as probable that the old fence was built upon the section line as that it was not,

and, having marked a boundary for about 40 years, that boundary ought not to be moved without better evidence than the record affords that it is incorrect.

We affirm the decree below, with costs to appellee.

BIRD, C. J., and HOOKER and STONE, JJ., concurred. BLAIR J., concurred in the result.