LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.
v. STERLING.

1. Boundaries—Fences—Agreement or Acquiescence.

A fence which plaintiff's lessor, a railroad corporation, erected in 1871, as it supposed, upon the line of its property, and which the adjoining proprietor assumed to be on the line, until about 1913, did not become the boundary line by acquiescence and agreement; not being located correctly.

2. Same—Adverse Possession—Occupation.

In order to bind the interested proprietors it is necessary that the parties make an honest attempt to fix the true boundary and agree upon a line orally or otherwise according to which they afterwards occupy the premises.

3. Same—Tacking on Possessions.

Without a privity between the successive owners in possession, the several possessions cannot be tacked together so as to create continuity. Hence, a proprietor who entered on his property under a deed of conveyance which excluded by description the land in dispute, could not maintain his claim thereto by adverse holding based upon his own possession and that of his predecessors in title.

Error to Hillsdale; Chester, J. Submitted October 21, 1915. (Docket No. 74.) Decided December 21, 1915.

Ejectment by the Lake Shore & Michigan Southern Railway Company against John S. Sterling. Judgment for plaintiff. Defendant brings error. Affirmed.

C. A. Shepard, B. E. Sheldon, and J. C. Riggs, for appellant.

Herbert R. Clark, for appellee.

The suit was begun October 27, 1914. From appellant's brief the following statement of facts is taken:

"On November 16, 1869, Mary E. Beagle conveyed to the Detroit, Hillsdale & Indiana Railroad Company, by deed recorded in Liber 71 of Deeds of Hillsdale County on page 28, its right of way through the northwest fractional quarter of section nineteen (19), Somerset township, in said county, described as follows:

" 'One hundred feet in width, being fifty feet on each side of the line which may be hereinafter established by said company for the route of their railroad over and across the northwest fractional quarter of section number nineteen (19), town five (5) south, of range one (1) west.'

"Soon thereafter the line for such route was established, and in due course of time, immediately following, its said railroad was by said company constructed and put in operation along said route, and its right of way inclosed as required by law. Thereafter, on February 10, 1871, the said Mary E. Beagle conveyed to said company, for station grounds in the village of Jerome, 4.47 acres adjoining said right of way on its northerly side and bounded as follows:

"Commencing at the point where such northerly boundary line of said right of way intersects the north and south quarter line of said section, and running thence south 51 degrees west 1,300 feet along said northerly boundary line; thence north 187½ feet; thence north 51 degrees east 1,300 feet; thence south 187½ feet to the place of beginning.

"Afterwards, on March 11, 1873, the said Mary E. Beagle conveyed to A. P. Cook all of said northwest fractional quarter section lying to the north of and adjoining said station grounds. Afterwards, and on September 5, 1881, the said railroad company, under the name of the 'Detroit, Hillsdale & Southwestern Railroad Company,' leased in perpetuity its said railroad to the Lake Shore & Michigan Southern Railway Company.

"The railroad was completed and put in operation early in the year 1871, and its right of way and added station grounds fenced through said quarter section as required by the statute then in force. This original fence on the northerly side of said station grounds stood for more than 20 years until 1893, when the

plaintiff made a survey thereof and of the northerly line thereof, and afterwards in the same year built a new fence along the said northerly side of said added grounds which stood until 1913. Neither the fence of 1871 nor that of 1893 enclosed the land in controversy within the railroad grounds.

"In the spring of 1913 plaintiff replaced the 1893 fence with a new fence placed between two and three feet further to the north and then for the first time took into the railroad grounds the parcel in dispute. This parcel, from the date of his deed in 1873, had been used, claimed, and occupied by A. P. Cook as his own to the time of his conveyance to the A. P. Cook Company in 1886, and from that time claimed, used, and occupied by the said company to 1901, when said company conveyed to George S. Cook, and was claimed, used, and occupied by George S. Cook to 1905, when he delivered possession to defendant under land contract, and by defendant since that time. These several possessions have been open, notorious, continuous, and hostile to the ownership or right of possession of anybody else.

"Neither the plaintiff nor its lessor ever had possession of the disputed parcel until 1913, when plaintiff moved its north boundary line fence to the north as before stated. From 1873 to 1913 the defendant and his grantors had openly, notoriously, and continuously occupied, possessed, cultivated, and improved up to this fence, which had been maintained on substantially the same line for 40 years. The disputed parcel was at the time of the removal of the line (1913) a small corner of the cement foundation of defendant's coalhouse and contains 7.48 square feet, of value, as ground simply, not exceeding four cents.

It is amended by appellee as follows:

"Plaintiff and defendant derived title to their respective lands from a common source, Mary E. Beagle. The deed from her to the railroad company of the right of way and the land north thereof, including the land in dispute, was made first and was recorded. Afterwards she deeded to defendant's predecessors the land now owned by him. In each of the deeds from Mary E. Beagle on down until defendant finally acquired

title, the southern boundary was given as the northern boundary of the railroad land. The land in controversy was not included in the description in any of the deeds from the time Mary E. Beagle owned it to the time it was deeded to defendant; neither do any of the deeds attempt to transfer possession of it. None of the parties owning or occupying the land in dispute did so for a period of 15 years. There is no evidence that there was anything said verbally about transferring possession of the land in dispute when any of the transfers were made. There is no evidence that any agreement or understanding was entered into between the plaintiff and defendant, or between plaintiff's predecessor and defendant's predecessors, that the fence where built should be considered as the boundary line."

We have before us neither the plat of the village of Jerome nor the blueprint used at the trial. Testimony was produced which tended to prove the facts above stated. The court, after stating the contentions of the parties, omitting the claim of defendant of title by adverse possession, advised the jury:

"Then you are instructed that if you find from the evidence that the fence was built soon after 1871, and rebuilt about 1893, was built and maintained as the true northerly boundary of the railroad grounds, and acquiesced in by the plaintiff and defendant and his grantors as the true northerly boundary line of the railroad grounds until 1913, then your verdict should be for the defendant.

"The contrary of this is true. If you do not find that the fence was built in 1871, or about 1871, and rebuilt about 1893, and that the same has not been maintained as the true northerly boundary line of the railroad grounds, or that the same has not been acquiesced in by the plaintiff and the defendant and his grantors as the true northerly boundary line, then your verdict would be for the plaintiff.

"You are instructed that the amount of land involved in this controversy, or its value, has nothing to do with the merits of the case. And if the plaintiff is entitled to recover you should bring in a verdict in its favor

189 Mich.—24.

the same as though a large amount of land and of large value was involved.

"The burden of proof is on the plaintiff to show title. And, gentlemen, if you believe that the surveys made by the two civil engineers who have taken the stand here is a true survey, then you should find that the plaintiff has record title to the land in question.

"The burden of proof is on the defendant to show that the old fence, and the fence that has been maintained until 1913, was acquiesced in by both the plaintiff and defendant as the true boundary line."

Defendant preferred requests to charge, which were not given, among them the following:

"The court instructs the jury that to constitute adverse possession, as explained in these instructions, for the period of 15 years, it is not necessary that the same person should have himself been in possession of the premises for the whole of that period. It is sufficient if the evidence shows that he and those under whom he holds, either as heir or purchaser, have held such possession for the full period of 15 years.

"You are further instructed that the title to real estate may be acquired by prescription, which is as valid and binding as one acquired by deeds; so if you find that the defendant and his grantors had been in possession and occupancy, exercising acts of ownership and claiming title to this land in question, for a period of 15 years prior to the time of the bringing of this suit, defendant's title to this land would thereby become absolute and perfect by prescription, and your verdict should be for the defendant.

"If the plaintiff or its lessor built a fence as and for its north boundary of its grounds, and maintained it for 20 years or more, and replaced it with a new one on substantially the same line, and the defendant and his grantors acquiesced therein, and in good faith and with a claim of right occupied, cultivated, and built upon their adjoining lands up to the line of said fence for the full period of the statute of limitations, and such occupancy was continuous, exclusive, open, and notorious, then the plaintiff would be estopped to deny that such fence was its north boundary, and if you should so find from the evidence the facts to be as

above premised your verdict should be for the defendant.

"A jury may infer a practical location of a disputed boundary line by agreement by long acquiescence less than the period necessary to constitute adverse possession, from acts and declarations of the parties."

The jury returned a verdict for plaintiff, upon which judgment was entered. A new trial was refused. There are several assignments of error, which need not be recited or expressly referred to. Plaintiff's title to the land, record title, being established, it must prevail, unless defendant has acquired title by adverse possession, or, what is equivalent to title, by a settlement of the boundary line.

OSTRANDER, J. (*after stating the facts*). 1. It may be inferred that both plaintiff's lessor and plaintiff meant to build the fences erected by them on the boundary line of the property. It may be inferred that defendant and his grantors assumed that the fence was upon the line. Beyond this the testimony does not permit us to go in the way of establishing a boundary line by agreement and acquiescence. The controlling rule is stated in *Smith* v. *Hamilton,* 20 Mich. 433 (4 Am. Rep. 398), is a rule of property, and has been consistently adhered to. *Olin* v. *Henderson,* 120 Mich. 149 (79 N. W. 178) ; *Sheldon* v. *Railroad Co.,* 161 Mich. 503 (126 N. W. 1056) ; *Parsons* v. *Bills,* 163 Mich. 415 (128 N. W. 721). Upon this subject there was no question for the jury to determine.

2. It is apparent that if defendant, who occupied the land for 8 years or more before disseised by the plaintiff, may add to his period of occupancy the periods when the land was occupied by others, he has acquired title by adverse possession. With those others, of whose periods of occupancy he claims the benefit

and advantage, he is in privity by deed of the adjoining land. But his own, or their, paper evidences of title do not convey the land in dispute, but exclude it. It is the rule that one having a deed of land enters under his deed. In the dissenting opinion of Mr. Justice MOORE, in *Sheldon* v. *Railroad Co.*, 161 Mich. 503, 517 (126 N. W. 1056), a stronger (and somewhat similar) case is stated in favor of tacking successive possessions of successive occupants of land than can be supported by the testimony in the case at bar. But this court held, and the ruling is controlling here, that there was no unity of possession under the original hostile entry; that without privity between successive occupants the several possessions cannot be tacked together, so as to make continuity of possession.

3. The disposition of the principal questions involved hereinbefore indicated, renders discussion of other questions debated in the briefs unnecessary, and requires a judgment affirming the judgment of the court below.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.