PHELPS *v.* BREVOORT.

1. BOUNDARIES—AGREEMENT—ACQUIESCENCE—CONTROVERSY.

To establish a boundary line by agreement and acquiescence, not only must there have been an express agreement, and monuments erected and acquiesced in, but a doubt or controversy must have existed as to the true line; otherwise the statute (3 Comp. Laws 1915, § 11975) prohibiting the conveyance of land by parol renders the agreement inoperative.

2. SAME—ADVERSE POSSESSION.

Where there was no dispute between the parties as to the true line and no agreement as to the location of a fence erected by one of the parties separating their several holdings, the party advantaged by the erroneous location of the dividing line may not profit by the mistake.

3. SAME—DESCRIPTION.

A description in a deed "600 feet in width," *held* to mean 600 feet at right angles.

4. EVIDENCE—DEEDS—AMBIGUITY—PAROL EVIDENCE.

Where there is no ambiguity in an instrument, parol evidence is inadmissible to vary or explain its meaning.

Error to Wayne; Mayne, J., presiding. Submitted June 4, 1919. (Docket No. 37.) Decided October 6, 1919. Rehearing denied December 23, 1919.

Ejectment by Ralph Phelps and another against Henry N. Brevoort and another. Judgment for plaintiffs on a directed verdict. Defendants bring error. Affirmed.

*Millis, Griffin, Seely & Streeter,* for appellants.

*Orla B. Taylor,* for appellees.

In an action of ejectment plaintiffs seek to recover possession of a strip of land about 20 feet wide and about 2,200 feet in length located on Grosse Isle, Wayne county, Michigan. On October 20, 1859, by a

decree of partition in the circuit court for the county
of Wayne, Private Claim No. 550 was subdivided. The
map of said subdivision, Schedule A, is herewith sub-
joined. Lot 1 of said subdivision was by the terms

of the decree assigned to the ancestor of Judge Henry
N. Brevoort. He, together with his brother, Thornton
E. Brevoort, inherited the whole of lot 1 and the in-
terest of Thornton E. Brevoort passed to Henry N.
Brevoort by warranty deed April 9, 1886. On Decem-
ber 15, 1894, Henry N. Brevoort sold the whole parcel
by land contract to Rod A. Demme. This contract was
discharged May 19, 1896, and a mortgage given by
Brevoort to Demme on the same day. On December
6, 1897, Brevoort executed a deed to said Demme of
a portion of said lot 1, described as follows:

"Land in the township of Monguagon, described as
the southerly 600 feet in width of lot 1 of the sub-
division of the east part of Private Claim 550 on
Grosse Isle, according to the plat thereof filed in the
clerk's office for Wayne county, in chancery (File No.
533), together with the rights and privileges apper-
taining thereto in the water front of said premises
hereby conveyed to the channel bank of the Detroit
river, also all rights, reversionary or otherwise, ap-
pertaining to said premises in the road or highway
across the easterly end of said premises, also a right
of way across the northerly 300 feet of said lot, 60
feet wide, the said right of way to be bound on the
north by the Mill road; on the west by westerly line
of lot 1; on the south by the northerly line of the
premises hereby conveyed, and on the east by a line
parallel to said westerly line of said lot 1 and 60 feet
distant from it, subject to a mortgage of $19,000 given
by first party to second party; also subject to any taxes
since May 19, 1896, date of unrecorded land contract
for sale of said premises to second party."

The title to said description through mesne convey-
ances now rests in the plaintiffs. On March 18, 1898,
Brevoort executed a mortgage on the balance of lot 1,
described as follows:

"Land in the township of Monguagon, described as
the northerly 300 feet in width of lot 1 of the subdi-
vision of the east part of Private Claim 550 on Grosse
Isle, according to plat thereof in File No. 533 in the

circuit court for the county of Wayne, in chancery, together with the rights and privileges appertaining thereto in the water front of said premises hereby conveyed to the channel bank of the Detroit river, also all rights, reversionary or otherwise, appertaining to said premises in the road or highway across the easterly end of said premises, and subject to a right of way 60 feet in width of the west end of the premises hereby conveyed as said right of way described in deed recorded in Liber 434 of Deeds, page 325."

On July 18, 1898, Brevoort executed a land contract on said last mentioned parcel to one Nehemiah C. Hinsdale, the description being as follows:

"Land situated in the township of Monguagon, county of Wayne, State of Michigan, to wit: The northerly 300 feet in width from front to rear of lot No. 1 of the subdivision of the east part of Private Claim No. 550 on Grosse Isle, according to the plat thereof filed in the clerk's office for Wayne county, in chancery (File No. 533), together with the rights and privileges appertaining thereto in the water front of said premises to the channel bank of the Detroit river, also all rights, reversions or otherwise appertaining to said premises in the road or highway known as the Horse Mill road, excepting and reserving from the above described premises a strip of land 60 feet wide from the westerly or rear end thereof."

Hinsdale failed to perform his contract and Brevoort retook possession of said premises and on May 4, 1900, executed a lease thereof to one Sherman, the description being as follows:

"The following described premises, situate and being in the township of Monguagon, county of Wayne and State of Michigan, to wit: A strip of land three hundred feet wide from front to rear of the northerly side of lot No. one of the subdivision of said lot northerly side of lot No. 1 of the east side of Grosse Ile, being part of Private Claim No. 550. Also a strip of land immediately adjoining the above mentioned parcel on the south, being six hundred feet front to rear of said lot No. one, said last mentioned parcel to be

used for the pasture of horses and cattle only, for the term of one year from and after the first day of May, 1900, on the terms and conditions hereinafter mentioned, to be occupied for farming purposes."

It will be noted that the premises described in this lease include the property theretofore sold by Brevoort to Demme. This is accounted for by the fact that neither Demme nor his successors in title ever actually occupied the premises conveyed to them, and Mr. S. S. Babcock, the agent for the owner, had given Judge Brevoort permission to use said land for pasturage. At the time Brevoort deeded to Demme no fence separated the southerly 600 feet of lot 1 from the northerly 300 feet. During the time the northerly 300 feet was held by Hinsdale under his contract with Brevoort he caused to be erected a fence east and west dividing the southerly 600 feet from the northerly 300 feet. It appears that some years prior to the building of this fence and in 1895 when Demme was interested in the whole of lot 1 he had caused Surveyor Howard to make a measurement of the southerly 600 feet of frontage on the river road, which road ran at an angle in a northwesterly direction. Here there was set by Howard a stake. The fence built later (1898), by Hinsdale, was not built upon the line indicated by Howard's stake, but upon a line some eight feet south thereof. At the time Hinsdale built said fence there was no agreement between him and the then owner of the southerly 600 feet as to its location. The location of the old fence and the line contended for by plaintiffs is shown on the following survey:

The land between the old fence and the dotted line being that in dispute. The court, after hearing the proofs, made the following finding:

"*First*, that the Broadhead line has been duly established for the purposes of this suit. *Second*, that the premises conveyed were to be 600 feet in width, meas-

207—Mich.—28.

SKETCH SHOWING CERTAIN MEASUREMENTS ON LOT I OF SUB. OF EASTERLY PART OF P.C. 550. GROSSE ISLE. WAYNE CO, MICH.

ured at right angles to the line drawn and connecting due north and south, the northern and southern boundaries, or drawn at right angles to the Broadhead line. *Third,* that the defendant, Judge Brevoort, was holding the premises conveyed by law presumptively in the interests of the grantees of his conveyance, and in subordination to his own covenants in the instrument of conveyance. For that reason adverse possession does not attach until there has been some positive, unequivocal assertion of the title on his part. I fail to find such an assertion of title. Therefore, there is no question for the jury to decide. The jury will be directed to return a verdict for the plaintiffs against the defendant."

The judgment entered upon the verdict so directed is now reviewed in this court by defendants.

BROOKE, J. (*after stating the facts*). It is the first contention of appealing defendant, Neele Davis Brevoort, that she has title to the property in question through adverse possession of herself and her grantor. This contention is based upon the theory that the fence built in 1898 was built by agreement between the then owners of the adjoining parcels. In support of this contention the following authorities are cited from this State: *Bower* v. *Earl,* 18 Mich. 367; *Bennett* v. *Robinson,* 27 Mich. 26; and *McCall* v. *Wells,* 55 Mich. 171. It seems to us a sufficient answer to this claim may be found in the fact that Judge Brevoort did not deed the northerly 300 feet to his wife, the defendant Mrs. Neele Brevoort, until September 15, 1908, and that he had occupied the southerly 600 feet for at least eight years under the verbal authority from Mr. Babcock and had himself released it to Sherman by a description which clearly recognized the rights of the plaintiffs' grantors in the whole of the lands described in the deed from Brevoort to Demme. A careful examination of the testimony of Judge Brevoort convinces us that he never had any intention of tak-

ing possession of any property which he had sold to Demme or of holding adversely to Demme and in contravention of his own covenants. He very probably believed that the fence built by Hinsdale was located upon the true line and this error seems to have been common among those interested in both parcels. It is, we think, quite clear from this record that, at the time the fence was built, there was no agreement between Hinsdale, the then owner under contract of the northerly 300 feet, and the owners of the southerly 600 feet. Moreover, there never was a controversy between the owners of the northerly 300 feet and the owners of the southerly 600 feet as to the true line. We have frequently held that title to lands may not rest in parol and that where a division of lands is effected as a settlement of a disputed boundary,—

"There must be, not only an express agreement, and monuments erected, which have been acquiesced in, but there must have been a doubt or controversy as to the true line; otherwise the case comes within the prohibition of the statute." *Olin* v. *Henderson*, 120 Mich. 149, 158.

See, also, *DeLong* v. *Baldwin*, 111 Mich. 466; *Turner* v. *Angus*, 145 Mich. 679; *Sheldon* v. *Railroad Co.*, 161 Mich. 503; *Parsons* v. *Bills*, 163 Mich. 415; *Lake Shore, etc., R. Co.* v. *Sterling*, 189 Mich. 366. From these authorities it is apparent that where there is no dispute between the parties as to the true line and no agreement between them as to the location of the fence separating their several holdings, the party advantaged by the erroneous location of the dividing line may not profit by the mistake.

We find the description in the deed from Brevoort to Demme to be entirely free from ambiguity. The words, "600 feet in width" mean 600 feet at right angles. As defined in Webster's dictionary the word "width" is a "certain measure between the sides meas-

uring in a direction at right angles to that of length."
Where there is no ambiguity in an instrument parol
evidence is inadmissible to explain or vary its mean-
ing. *Longe* v. *Kinney,* 171 Mich. 312, and cases cited.

It is unnecessary further to notice claims of the
appellant as the above conclusions are controlling of
the issue presented.

The judgment is affirmed.

BIRD, C. J., and MOORE, STEERE, FELLOWS, STONE,
and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this de-
cision.