## WILHELM *v.* HERRON.

1. LANDLORD AND TENANT — POSSESSION OF TENANT INURES TO BENEFIT OF LANDLORD—ADVERSE POSSESSION.

   Where the relation of landlord and tenant exists the possession of the tenant is the possession of the landlord.

2. ADVERSE POSSESSION—TACKING POSSESSION.

   Possession of a strip of land by a tenant inured to the benefit of his landlord, and could not be tacked on to his occupancy as owner, after his purchase from the landlord of adjoining land, for the purpose of establishing title by adverse possession.

3. SAME — CONVEYANCES — RIGHT TO GRANTOR'S POSSESSION NOT CONVEYED.

   Where the grantee relies upon his deed to show privity of estate, he cannot have the benefit of the grantor's possession of lands which are not conveyed by the deed.

4. SAME — POSSESSION FOR STATUTORY PERIOD — EVIDENCE — SUFFICIENCY.

   *Held*, that, if the description in plaintiff's contract of purchase be deemed broad enough to include the disputed strip of land and he be permitted to add the period of his grantor's occupancy with that of his own, he still fell short of the full statutory period of 15 years.

5. BOUNDARIES—LINE FENCE—ESTABLISHMENT BY AGREEMENT.

   An agreement to rebuild a line fence on the old line and that if a later survey showed it to be off the true line it should be placed on that line, *held*, not to show such an actual dispute as to where the line was and an agreement for its adjustment as to render applicable the rule of established boundaries.

6. SAME—RULE—WHEN APPLICABLE.

   To render applicable the rule of established boundaries by agreement, there must have been an actual dispute as to where the line is, and an agreement for its adjustment.

7. ADVERSE POSSESSION—QUIETING TITLE—PLAINTIFF TO PREVAIL ON STRENGTH OF OWN TITLE.

   To entitle plaintiff to a decree quieting title to a strip of

land to which defendants have the record title, plaintiff must establish title in himself, and must prevail, if at all, upon the strength of his own title rather than upon the weakness of defendants'.

8. SAME—EVIDENCE—SUFFICIENCY.
    In said action, proofs *held*, insufficient to establish title in plaintiff.

9. APPEAL AND ERROR—DAMAGES DUE TO INJUNCTION—QUESTION. NOT DECIDED BELOW.
    In proceedings to quiet title, defendants' request in this court that the case be referred to a commissioner to ascertain the damages they have sustained by reason of the issuance and continuance of an injunction must be denied where the decree of the court below makes no such provision and defendants have not appealed, and there is no proof of any damages by reason thereof.

Appeal from Ingham; Wiest (Howard), J. Submitted June 11, 1920. (Docket No. 68.) Decided July 20, 1920.

Bill by Christopher Wilhelm against Richard C. Herron and another to quiet title to land and to enjoin a trespass thereon. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*F. L. Dodge* (*D. G. F. Warner* and *C. F. & E. T. Hammond,* of counsel), for plaintiff.

*Jason E. Nichols,* for defendants.

FELLOWS, J. Plaintiff seeks by this bill to quiet title to a strip of land 42 feet wide at the north end, 31 feet wide at the south end, and 1,963.5 feet long, situated on the west half of the southeast quarter of section 3 of Lansing township, Ingham county, and to restrain defendant from taking gravel therefrom or trespassing thereon. Sufficient facts are stated in the bill to sustain it as a bill to quiet title and to afford the other relief as incidental thereto. Defendant and his wife as tenants by the entirety hold the record

title to the disputed strip and own land to the east thereof. Plaintiff's sole claim of title is by adverse possession. In 1877 one Clayton W. Everett owned both pieces of land. The record title of the parties appears from the following statement taken from the opinion of the trial judge:

"March 3, 1877, Clayton W. Everett became the owner of the southeast quarter of section three, and on August 21, 1878, he conveyed to Elizabeth K. Taylor the east twenty-four acres of the west 26.45 acres of that part of the southeast quarter of section three lying southeast of the center of the public highway and bounded on the east by a tract of twenty-two acres of land conveyed by him to Hiram Perkins and Charles D. Potter.

"Elizabeth K. Taylor died intestate, possessed of the land, and September 12, 1902, the probate court determined her heirs, among whom was Joseph A. Strowbridge, who later acquired the interests of his tenants in common.

"August 1, 1879, Everett conveyed to Edwin D. Allen the west 2.45 acres of that part of the southeast quarter of section three lying south of the highway.

"November 12, 1880, the auditor general, by tax deed, conveyed to E. D. Allen the Taylor description of land for the delinquent taxes of 1878.

"November 18, 1882, Allen by quitclaim deed conveyed such tax title to Joseph A. Strowbridge, reciting in the deed that the object was 'to release a tax title on said premises, and excepting the use of the premises until Strowbridge should sell the same, and excepting the fences of the lands and giving Allen the privilege of removing the same, Allen to pay the taxes.'

"May 12, 1903, Strowbridge deeded Allen the east 22½ acres of the west 26.45 acres of the southeast quarter of section three 'bounded east by the tract of 22 acres conveyed by Clayton W. Everett to Hiram Perkins and Charles D. Potter, excepting the fences around said piece of land.'

"March 20, 1911, Allen deeded to plaintiff the west 24.95 acres off the west side of the quarter section in question.

"The record title to the portion of defendants' land to which plaintiff claims title by adverse possession, was conveyed by Clayton W. Everett on October 4, 1877, to Hiram Perkins and Charles D. Potter and on November 2, 1888, by Perkins and Potter to James H. Wellings and on January 7, 1912, by James H. Wellings to Richard C. Herron and Amy Herron."

While the record does not disclose the date of the death of Elizabeth K. Taylor, it must have been as early as 1882 as in that year Strowbridge acquired by quitclaim deed the interest of two of her heirs, and after the probate proceedings in 1902 and before he conveyed to Allen and presumably to clear up the title in anticipation of such sale he acquired another quitclaim deed from other heirs.

It will be noted that by the terms of the deed to Strowbridge Mr. Allen was to have the use of the land and was to pay the taxes for such use. We agree with the trial judge that the relations of landlord and tenant existed between Mr. Allen and Mr. Strowbridge and that where such relations exist the possession of the tenant is the possession of the landlord. The testimony shows that during such tenancy Mr. Allen used and occupied land which included the disputed strip up to a certain fence to which we shall presently refer; but the testimony would not justify us in finding that his use and occupancy of the disputed strip was in his own right for his own benefit or other than as tenant of Strowbridge until the time he purchased. So far as the record discloses all the lands he occupied except the 2.45 acres deeded to him in 1879 were occupied as Strowbridge's tenant. We therefore do not determine the question stressed at the argument that Allen could acquire by adverse possession title to land not contemplated in his lease from Strowbridge as the record does not, we think, make such a case. So far as this record discloses Allen occupied the land his landlord had occupied before the tenancy began

and he occupied no other. Whatever use Allen made of the disputed strip was as tenant of Strowbridge and such use was in connection with the other lands he was using as such tenant. He does not appear to have asserted any claim in himself or to have had any occupancy hostile to Strowbridge, and so far as his occupancy was adverse to defendants' predecessors in title, it was for the benefit of Strowbridge. We must hold upon this record that whatever benefit was derived by such use inured to the landlord, and Allen's occupancy of the disputed strip as tenant could not be tacked on to his occupancy as owner of the 22½ acres after he purchased that amount of land from Strowbridge.

When Strowbridge deeded to Allen on May 12, 1903, he deeded the east 22½ acres of the west 26.45 acres, and its east boundary was the tract of 22 acres conveyed by Clayton W. Everett to Hiram Perkins and Charles D. Potter, a quantitative description. If Strowbridge had acquired title to the disputed strip by adverse possession he did not convey such title to Allen, nor can Allen tack on to his possession after he purchased the possession by Strowbridge of lands not included in the description or apparently intended to be conveyed for the purpose of making up the statutory period of adverse possession. In the case of *Sheldon* v. *Railroad Co.*, 161 Mich. 503, this question was fully considered and the authorities were collected in the majority opinion written by Mr. Justice STONE. That opinion so exhaustively considers the question that we forbear repetition. We there held (we quote from the syllabus) :

"Separate successive disseisins cannot be tacked so as to constitute one and a single continuous possession, unless there is privity of estate between the successive parties in possession, each coming in as the transferee of the possessory rights of his predecessor.

"Where the grantee relies upon his deed to show

privity of estate, he cannot have the benefit of the grantor's possession of lands which are not conveyed by the deed."

See, also, *Lake Shore, etc., R. Co.* v. *Sterling,* 189 Mich. 366; *Kushler* v. *Weber,* 182 Mich. 224, 205 Mich. 400.

There is testimony in the case that when plaintiff bought of Allen he was shown the boundaries and fences including the fence to which we have referred and to which we shall presently again refer, and the contract between him and Allen was introduced in evidence. In this contract the premises were described in general terms and the description may be deemed broad enough to include the disputed strip. But these facts do not aid plaintiff because if he is permitted to add the period of Allen's occupancy under his deed with that of his own prior to the filing of this bill, he will still be some 5 months and 20 days short of the statutory period of 15 years. Nor do we think plaintiff's testimony shows that during all the period of his occupancy of the premises his possession was hostile. The parties bought their respective pieces of land about the same time. While there is some conflict in the evidence we are convinced that at the time of the purchase the fence had practically disappeared. The parties then agreed that the fence should be put up on the old line and if a later survey showed it to be off the true line it should be placed on that line. It is also established that the parties agreed to have a survey and abide the result of the survey; the plaintiff employed the surveyor to make the survey but when he had gone far enough with the work to demonstrate that he would be the loser he stopped the work and took the surveyor back to town and did not have the survey completed. It is not claimed that these agreements are enforceable as against the objection of the statute of frauds but they may be considered upon the

question of whether plaintiff's possession was hostile during the time of his occupancy.

There has been a fence on the east line of the disputed strip for a great many years and numerous authorities have been called to our attention involving disputed boundaries and where to settle such disputed boundaries an agreement resting in parol has been entered into fixing the line, followed by the erection of a fence on the agreed line, and acquiescence in such line thereafter, and in which cases it has been held that long acquiescence in said line so fixed establishes it as the line even though the full period required to establish title by adverse possession had not run. But these cases are not applicable here. Not only is there a total absence of evidence of any agreement to fix a line before the original fence was constructed but plaintiff's own testimony shows that this fence was in existence long before the two pieces were separated and when both were owned by the same person. One of plaintiff's witnesses testifies unequivocally that the fence has been there "fifty years anyway." The line of authorities cited is not applicable unless there has been an actual dispute as to where the line is and an agreement for its adjustment. *Parsons* v. *Bills,* 163 Mich. 415; *Lake Shore, etc., R. Co.* v. *Sterling, supra; Phelps* v. *Brevoort,* 207 Mich. 429. There is no testimony in the case bringing it within the authorities relied upon.

To entitle plaintiff to a decree quieting title, he must establish title in himself. Defendants have the record title to the disputed strip. As against that record title plaintiff must prevail if at all upon the strength of his own title rather than the weakness of defendants'. His proofs fail to establish title in himself and his action must likewise fail.

Defendants and appellees in their brief ask that the case be referred to a commissioner to ascertain the

damages they have sustained by reason of the issuance and continuance of the injunction. But the decree of the court below makes no such provision and defendants have not appealed, nor is there any proof of any damages by reason of the issuance and continuance of the injunction. Defendants' request is denied. The decree as entered in the court below will be affirmed. Defendants will recover costs of this court.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.