HANLON *v.* TEN HOVE.

1. ADVERSE POSSESSION—TACKING POSSESSION.

Where a grantor conveys a specific piece of property, the grantee may not tack onto the period of his holding of an additional piece of property the period of his grantor's occupancy thereof to make up the statutory period to acquire title by adverse possession.[1]

2. BOUNDARIES—ACQUIESCENCE ALONE IS INSUFFICIENT TO ESTABLISH LINE.

Acquiescence in a boundary line, standing alone, is not sufficient defense to an action of ejectment.[2]

3. SAME—ACQUIESCENCE SHOULD BE BASED ON AGREEMENT COMPOSING DIFFERENCES.

An agreement made the basis of acquiescence in a boundary line, to be a sufficient defense to an action of ejectment, should be one based on a doubt or dispute between the parties as to where the line is, and a resolving of the doubt or the composing of their differences by an agreement upon a line.[3]

4. SAME—ACQUIESCENCE RESULTING FROM COMPOSING DIFFERENCES NEED NOT CONTINUE FOR STATUTORY PERIOD.

Where neighboring proprietors have composed their differences and in good faith agreed upon a line and have fixed their monuments, erected their fences, and maintained them, the acquiescence need not continue for the statutory period in order to establish the line.[4]

5. SAME—ACQUIESCENCE FOR STATUTORY PERIOD.

Acquiescence in a boundary line for the statutory period fixes the line.[5]

6. SAME.

Where acquiescence in a boundary line between city lots continued for over 40 years, each party having used to the line and no further, and for many years maintained a fence, the line was fixed.[6]

[1]Adverse Possession, 2 C. J. § 105 (Anno); [2]Boundaries, 9 C. J. § 196 (Anno); [3]Id., 9 C. J. §§ 176, 177, 178, 198; [4]Id., 9 C. J. § 182; [5]Id., 9 C. J. § 197; [6]Id., 9 C. J. § 199.

7. SAME—ORIGINAL LINE ACCEPTED FOR STATUTORY PERIOD FIXED
AS TRUE LINE ALTHOUGH INACCURATE.
   Where the line fixed by the original survey, although in-
   accurate, has been accepted as the true line and acquiesced
   in for the statutory period, it is the fixed boundary.[7]

8. SAME—LINE FENCES FIX BOUNDARY WHERE ORIGINAL MONU-
MENTS CANNOT BE FOUND.
   Where the ancient monuments from which the original
   boundary lines were fixed cannot be found, but line fences
   have existed for more than the statutory period, they
   are to be followed, in fixing the line, rather than a modern
   survey.[8]

Error to Muskegon; Vanderwerp (John), J.    Sub-
mitted April 8, 1926.    (Docket No. 42.)    Decided
June 7, 1926.

Ejectment by Mary Hanlon against Andrew Ten
Hove and another.   Judgment for defendants.   Plain-
tiff brings error.    Affirmed.

*Macdonald & Macdonald*, for appellant.

*George S. Lovelace*, for appellees.

FELLOWS, J.    Plaintiff holds the record title to the
east half of lot 2 of block 367 of the revised plat of
the city of Muskegon.    Defendant Andrew Ten Hove
holds the record title to lot 15 and the westerly 3
feet of lot 14 of the same block.'   Defendant Elizabeth
Ten Hove is his wife.   These lots face on Third street
and are business property.   We take it they were
formerly part. of the west half of the block.    This
action of ejectment involved the boundary line at the
rear of the business lots.    Shortly before bringing
the action plaintiff employed a surveyor who de-
termined that the block overruns and apportioned the
overrun among the owners.    He was unable to find
any of the original monuments.    There was testi-

_____

[7]Boundaries, 9 C. J. § 199; [8]Id., 9 C. J. § 199 (Anno).

mony in the case that for upwards of 40 years a fence had been maintained on the present line. Defendant purchased the property about 12 years before this suit was instituted and during his occupancy he used and improved the property up to the line of the old fence, and there is testimony that his predecessors in title had done the same, and there was testimony that there was no dispute over the line until the recent survey. The case was tried by the court without a jury. He made and filed findings of fact and conclusions of law. By proposed findings of fact and conclusions of law and by proper exceptions, plaintiff has saved all questions for review and they include substantially all questions which usually arise in such litigation. As boundary line litigation seems to be coming into vogue again, we shall go into the questions involved at some greater length than the value of the property at stake ordinarily would require.

1. Adverse Possession. Defendant had been in possession for but 12 years. His deeds conveyed to him lot 15 and the westerly 3 feet of lot 14. If his predecessors in title owned or had any interest in land west of these lots they did not convey it to him. Plaintiff's counsel insist that decisions of this court dealing with the questions of "tacking" are, therefore, applicable. While the members of this court have not always been in accord on the question, a majority of the court has consistently held that where a grantor conveys a specific piece of property, the grantee may not tack on to the period of his holding of an additional piece of property the period of his grantor's occupancy thereof to make up the statutory period. His grantor has not conveyed such property or his interest therein and there is no privity. Illustrative of such cases, see *Sheldon* v. *Railroad Co.,* 161 Mich. 503; *Lake Shore, etc., R. Co.* v. *Sterling,* 189 Mich. 366; *Wilhelm* v. *Herron,* 211 Mich. 339; *Robertson* v. *Boylan,* 214 Mich. 27; *Bunde* v. *Finley,* 224 Mich. 634. The rule of

these cases is not a harsh rule. If "A" purchases and holds the record title to 40 acres of land and by adverse possession obtains title to an adjoining 40 acres, it would hardly be contended that a conveyance by him of the 40 acquired by deed would carry with it title to the 40 acquired by adverse possession. So if "A" acquires by deed a 40 acres and obtains an adjoining strip 2 rods wide or some interest in it, his conveyance of the 40 acquired by deed does not carry with it his interest in the adjoining strip. If the sole defense here was that of adverse possession, we would be obliged to hold that it had not been made out.

2. Acquiescence. Acquiescence in a boundary line, standing alone, is not sufficient defense to an action of ejectment. Numerous cases have come to this court where it was claimed that a line had been agreed upon and acquiesced in thereafter. We have quite uniformly held that the agreement made the basis of such acquiescence should be one based on a doubt or dispute between the parties as to where the line is and a resolving of the doubt or the composing of their differences by an agreement upon a line. Illustrative of this class of cases, see *Phelps* v. *Brevoort*, 207 Mich. 429; *Olin* v. *Henderson*, 120 Mich. 149; *DeLong* v. *Baldwin*, 111 Mich. 466; *Turner* v. *Angus*, 145 Mich. 679. But where neighboring proprietors have composed their differences and in good faith agreed upon a line and have fixed their monuments, erected their fences and maintained them, the acquiescence need not continue for the statutory period in order to establish the line. *Smith* v. *Hamilton*, 20 Mich. 433 (4 Am. Rep. 398) ; *Stewart* v. *Carleton*, 31 Mich. 270; *Jones* v. *Pashby*, 67 Mich. 459 (11 Am. St. Rep. 589). Where coupled with acquiescence is the further fact that it has continued for the statutory period, such acquiescence for such statutory period fixes the line. *Call* v. *O'Harrow*, 51 Mich. 98; *Diehl* v. *Zanger*, 39 Mich. 601; *Greene* v. *Anglemire*, 77 Mich. 168; *F. A.*

*Wolf Brick Co.* v. *Lonyo,* 132 Mich. 162 (102 Am. St. Rep. 412) ; *Marion* v. *Balsley,* 195 Mich. 51.    So in *Gildea* v. *Warren,* 173 Mich. 28, the plaintiff had not been in possession of the premises for the statutory period.    If the question of tacking was involved, she could not tack on the period of occupancy of her predecessors in title, but the fences had been acquiesced in for more than the statutory period and it was held that they fixed the line, and in *Bunde* v. *Finley, supra,* while the court held that defendant could not tack on the period of possession of his predecessor to his own in order to establish adverse possession, we at the same time sustained the following instruction:

"Where a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for fifteen years the boundary line ought not to be disturbed even if there were some variance from the true line, and a long established fence is better evidence of actual boundaries settled by practical location than a survey made after the monuments of the original survey have disappeared.    And where a boundary line has been recognized and acquiesced in for fifteen years it would not be disturbed by reason of new surveys."

The instant case falls within the line of cases last discussed.    The testimony clearly establishes that for over 40 years the line claimed by defendant has been acquiesced in.    On both sides of the line the respective parties have used to the line and no further; for many years a fence was maintained; in later years the business property has been used up to the line and, as we understand the record, improvements of some cost have been made by defendant.    That the respective parties have acquiesced in the line for more than the statutory period is abundantly sustained by the proof. To restate the question of acquiescence, let us say: While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a *bona fide* controversy, which

settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter, such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; likewise where the line is acquiesced in for the statutory period it is also fixed.

3. Old Line Fences.    The probative force of the late survey on the one hand and the existence of the old line fence on the other have been discussed at some length by both counsel.    We have called attention to the fact that the surveyor was unable to find any of the original monuments.    This court has frequently noted the fact that many of the original surveys were doubtless inaccurate, but we have held that where they have been accepted as the "true line" and acquiesced in for the statutory period, the lines although inaccurate and disputed by later surveys will be treated as the fixed boundary.    We have also held that where the ancient monuments cannot be found, but line fences have existed for more than the statutory period, they are probative of where the line is and should be followed in preference to a modern survey.    Among such cases, see Stewart v. Carleton, supra; Diehl v. Zanger, supra; Carpenter v. Monks, 81 Mich. 103; Hoffman v. City of Port Huron, 102 Mich. 417; Hustina v. Indian Refining Co., 222 Mich. 369.    In Carpenter v. Monks, supra, it was said:

"It will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, without some proof of its being a true line, located and fixed by the original survey.    The only practical way of ascertaining the true line is by a survey made from some fixed starting point,—some monument placed under the original government survey,—and, if such monuments are no longer discoverable, the question is, where were they located?    And fences of long standing, and erected upon what parties have called the 'true line,' and up to which they have improved and cultivated, are better evidence of the

true line than surveys made after the monuments have disappeared."

And in *Hustina* v. *Indian Refining Co., supra,* it was held (quoting from the syllabus) :

"Where the original monuments marking the boundary between the two city lots had disappeared, a fence between the lots which had existed for more than 15 years is *held*, to be determinative of the line."

We should adhere righteously to the holding in this case.    It bespeaks for the peace and quiet of the community.    An old line fence may be of little value to stop stock in the country and of little value for practical purposes in a city, but it is of incalculable value in fixing the boundary line.    The original survey may have been inaccurate, its lines may not correctly and accurately fix the boundary, but if they have been acquiesced in for a sufficient length of time, they fix the "true line" as matter of fact and as matter of law.    The trial judge would not have been justified in reaching any other conclusion than he did.

The judgment will be affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, CLARK, and MCDONALD, JJ., concurred.    WIEST, J., concurred in the result.