BERRY *v.* STEUER.

1. ADVERSE POSSESSION—CONTINUOUS OCCUPANCY FOR MORE THAN STATUTORY PERIOD GIVES TITLE.

> Where, for nearly 20 years, plaintiffs have been in actual and continuous occupancy of land up to a fence established as a line fence, they have acquired title by adverse possession.

2. BOUNDARIES—LINE FENCES—SLIGHT BREAK DOES NOT DESTROY CHARACTER OF LINE FENCE.

> Where a line fence running to a steep bluff on the lake shore was not extended because it was as effective a barrier as if it had been extended to the water's edge, the slight break in so distinctive a fence would not destroy its character as a line fence.

Appeal from Allegan; Cross (Orien S.), J. Submitted January 15, 1929. (Docket No. 53, Calendar No. 33,817.) Decided March 29, 1929.

Bill by John Berry and another against Abraham Steuer and another to quiet title to land. From a decree for plaintiffs, defendants appeal. Affirmed.

*Jarrett N. Clark*, for plaintiffs.

*Ira C. Montague* and *Clare E. Hoffman,* for defendants.

FEAD, J.   This is a suit to quiet title, a line fence case.   In 1893 German Richards conveyed to his daughter, Eva James, the north 10 acres of the north half of a fractional quarter section of land in Allegan county, bounded on the west by the meander line of Lake Michigan.   Along the shore is a steep and high bluff.   Some time later Richards conveyed the balance of the property to Mrs. James, and in 1899 she conveyed the north half, except the north 10 acres, to Walter A. Bushnell.   In 1900 Mrs. James sold the north 10 acres to plaintiffs.   In 1918 Bushnell sold to parties who in 1921 conveyed to defendants.

Bushnell and Mrs. James had a slight dispute as to the ownership of some fruit trees, and a survey was made to set off her 10 acres.   The surveyor apparently measured only to the top of the bluff instead of to the meander line, and set a stake.   The survey was inaccurate.   If, as claimed by defendants, he intended to measure 10 acres on high land, he fell short, as the west point would need to be put 99 feet west of the stake, or about at the foot of the bank, to accomplish that area.   If the land be computed by extending the south line to the meander line, the north portion would contain over 11 acres. A line fence was constructed by the parties on the survey.   It ran only to the bluff.   It was not necessary to extend it to the shore, as the bank was too high and steep to permit cattle to go around the end of the fence.   Plaintiffs, Bushnell, and the latter's grantees have been in actual and continuous occupancy of their respective lands to the fence since 1901.   About 1925 the line fence became dilapidated,

although still standing. Plaintiffs rebuilt half and demanded that defendants do likewise. The latter then made claim that the survey was wrong, and now ask that the true line be run or they be decreed to own the shore west of the bluff, plaintiffs to have 10 acres on the high land if the line be undisturbed. Plaintiffs claimed the 11 acres by adverse possession, and the circuit court held with them.

Defendants' contention is that the line was run upon agreement that Mrs. James should have 10 acres of high land, that the shore to the west thereof should go with the south portion, and, because of such agreement, plaintiffs cannot claim both their own shore by deed and the excess high land and shore by adverse possession, under *Bird* v. *Stark,* 66 Mich. 654. Mr. Bushnell died before suit, and the testimony supporting this claim was indirect and meager. Mrs. James specifically denied such agreement. As the survey was inaccurate under either claim, it is not of great weight.

When the survey was made, the beach had no market value. Hence it would not have been unreasonable either that Mrs. James agreed to take her 10 acres on high land, or that the survey was made without reference to the beach and the line run deemed to extend to the meander line. There was testimony that Bushnell, in his lifetime, had claimed to own the shore west of the 10 acres, and that it was generally reputed to be his. Other neighbors denied the claim and the reputation. There was an entire lack of evidence that he ever made claim to the shore to Mrs. James or plaintiffs or that he ever exercised, or attempted to exercise, any acts of physical dominion over or use of the beach north of the line fence. Bushnell's controversy with Mrs. James about the fruit trees indicates that he would

have made open claim for the shore had he considered it his. Plaintiffs claimed the shore and made such use of it as was ordinarily possible. They several times built steps down the bluff, made it the dumping grounds for refuse, took sand from the beach, and their summer guests made free use of the shore as belonging to the upland. The conduct of Mrs. James, plaintiffs, and Bushnell over a period of nearly 20 years is persuasive that the line, established in 1899, was deemed to be the dividing line between the properties. Adverse possession to the line for the statutory period gave title. *Hanlon* v. *Ten Hove,* 235 Mich. 227 (46 A. L. R. 788).

Defendants contend that the line established did not set the boundaries because it did not actually run down the bank and across the shore. *Conner* v. *Railroad Co.,* 183 Mich. 241. However, in the present case the fence ran as far as there was any necessity for it. It was as effective a barrier and gave as definite notice of the whole line as though it had been extended to the water's edge. For all practical purposes it was a complete fence through the property. The slight break in so distinctive a fence would not destroy its character as a line fence.

We agree with the circuit court that the testimony shows plaintiffs in adverse possession of the premises for the period of limitations, and the decree is affirmed, with costs.

NORTH, C. J., and FELLOWS, CLARK, and SHARPE, JJ., concurred with FEAD, J. WIEST, McDONALD, and POTTER, JJ., concurred in the result.