PHILLIS BEAUBIEN v. HENRY KELLOGG ET AL., AND
PHILLIS BEAUBIEN v. HENRY KOENIG ET AL.

(TWO CASES.)

*Boundary lines—Survey—Ancient fences—Charge to jury.*

1. A charge to a jury, by which they are given to understand that a disputed question of fact has been established by the proofs, is misleading.
2. Ancient fences used by a surveyor in attempting to reproduce an old survey are strong evidence of the location of the original lines, and, if they have stood for 20 or 30 years, should be taken as indicating *such* lines as against evidence of a survey ignoring such fences, and *assuming* a starting point at a certain street because agreed upon by surveyors as the true line.
3. It will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, without some proof of its being a true line located and fixed by the original survey.

Error to Wayne. (Jennison, J.) Argued February 8, 1888. Decided April 13, 1888.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*Stewart & Galloway* and *C. B. Howell,* for appellants.

*Edgar Weeks,* for plaintiff.

LONG, J. In 1847, Mrs. Basilique St. Aubin was the owner of what was known as the "St. Aubin Farm," now lying in the city of Detroit. The farm was three miles in length; and, for the purpose of dividing it among her eight children, she caused the same to be surveyed and platted by one John Mullett. This plat was made, and recorded in the office of the register of deeds of Wayne county, in 1847.

Mrs. St. Aubin, during that year, conveyed outlot 54 of the Mullett plat to her daughter, Mrs. Watson, and outlot 51 to another daughter, Phillis Beaubien, plaintiff in the above cases. These two outlots, according to the Mullett survey and plat, were 654.37 feet in length north and south, and lie on the westerly side of St. Aubin avenue; lot 54 adjoining lot 51 on the north. Subsequently, Ferry street was laid out through lot 54, extending westerly from St. Aubin avenue.

After Ferry street had been laid out, Mrs. Watson deeded that part of lot 54 lying south of Ferry street to one John Norton, who subdivided and platted it, and conveyed lot 22 to defendant Kellogg, and lot 10 to defendant Koenig, who went into possession; Kellogg erecting a cottage on lot 22, worth $670, and Koenig erecting one on lot 10, worth about $550.

October 10, 1884, Eugene Robinson, a civil engineer and surveyor, made a plat and survey of lot 54 lying south of Ferry street; this survey extending 273.20 feet south from Ferry street to the line between lots 51 and 54. Defendants purchased these lots, which lie upon the south side of this Robinson plat, and erected said cottages. This Robinson plat was recorded.

August 25, 1885, the plaintiff caused lot 51 to be surveyed and platted by Jerome and Daly. This plat extended 105 feet north from Kirby avenue, and overlapped the Robinson plat, so made and recorded, 14.2 feet. Plaintiff now claims that the survey and plat made by Jerome and Daly of lot 51 ascertains and describes the true location of lot 51, and the true line between that lot and lot 54. This line, established by the Jerome and Daly survey, runs directly through the center of the two cottages of defendants. It is admitted that the defendants built and have occupied the premises in good faith, under the belief that their title was clear.

These two suits were brought in ejectment in the circuit court for Wayne county to recover possession of this strip of

land, 14.2 feet in width across these two lots.   Both suits were tried as one, and the plaintiff prevailed, and defendants bring the cases here on writ of error.

The principal question in controversy is the true line between lots 51 and 54.   The plaintiff claims the true line is as found by the Jerome and Daly survey.   The defendants claim the true line is as found by the Robinson survey.

Jerome and Daly were both called as witnesses for plaintiff, and gave testimony tending to show that they made surveys of outlots 43, 48, 49, 51, and 52, and that these were all platted by John Mullett in 1847, to be the same size.   In making this survey, August 25, 1885, they set down and commenced at Fremont street, some 2,600 feet south of lot 54, and they testify that, so commencing at Fremont street, and measuring the distance of each lot as shown on the Mullett plat, the north line of lot 51 would overlap the Robinson survey of lot 54, 14.2 feet.   These surveyors, in establishing this line, had nothing to guide them except the courses and distances marked on the Mullett plat, and each says they took Fremont street as the starting point; on account of its having been formerly run by Robinson, and that surveyors have agreed on that as a line.   There was no difficulty in thus surveying in giving distance to all these lots down as far as Fremont street.   No cross-fences were found that would have a tendency to designate this line upon the ground.   There were some old fences there, but these witnesses did not consider them in fixing lines.

Eugene Robinson was called as a witness for the defendants, and testified, substantially, that he made a survey of the south line of lot 54.   He has been a surveyor for 35 years and more, in Detroit, and from 1861 to 1872 or '3 was city surveyor, and laid out a great many streets in Detroit.   In laying out these streets he became familiar with outlot lines, and has been familiar with these lines for over 30 years; knows of a fence on the line between lots 54 and 51; that the

south line of lot 54 is south from Ferry street a distance of 273.20 feet; and that he found a fence there, and it was identically the same line as found by his survey; and the fence on the opposite side of St. Aubin avenue, between lots 52 and 53, corresponded with the fence on the west side of St. Aubin avenue, between lots 51 and 54.

Mr. McLaughlin, a surveyor, was also called as a witness for defendants, and testified to a survey made by him, and says:

"I know where the line has been surveyed between lots 51 and 54. It agrees exactly with the line as located by Mr. Robinson, as near as I could see. I examined across the street, and found indications of an old fence there. It agreed with Mr. Robinson's line very closely."

Some evidence was also given by the defendants tending to show that a fence was built between lots 51 and 54 in 1868 or 1869, and that that was the fence found by Robinson as dividing lots 51 and 54. Plaintiff contended, however, and offered some proofs tending to show the fact, that this fence was built much later than that date, and, when built, was not on the line between lots 51 and 54; and some evidence was also given by plaintiff tending to show that these two out-lots, some years prior to 1868, were fenced together, and the whole used as one parcel for pasture lands; and the division fence, to which Robinson's and McLaughlin's attention was called, was put up by parties renting lot 54, and without regard to the true line, and that the same never was agreed upon between the parties as the true line between these lots.

The object of Mullett's survey was to make a practical location of the ground each was to receive, and undoubtedly the lots were staked off by Mullett; but these stakes have become lost or obliterated, and very probably by the widening of St. Aubin avenue, which was done some years ago, and subsequent to the Mullett survey; and it is evident that, while these lines were still traceable, the greater portion of

the division fences between these lots were erected, and that these fences in time became the only existing evidence of where the ground lines were actually located by Mullett; and these fences became a matter of great importance; and Robinson, who had been a surveyor for 35 years, testified that he had been familiar with them for over 30 years, and he had occasion to check them off.

It further appeared from the testimony of Mr. McLaughlin that his survey agreed with Robinson's, and that he took the old fences as marking the line; that the fences are all in proportion; and that it must have been done by a surveyor, or, at least, that the fences were laid out by a surveyor, and they all follow in the same proportion; and Mr. McLaughlin says:

The fences could not have been so placed at random, because of the regularity with which they measure, and that they can be put there to-day, and will not vary two inches, and that, when Fremont street was opened, in 1869, by Mr. Robinson, in which he (McLaughlin) assisted, the old fences were all standing, and he recollected climbing them.

It was claimed by the defendants that this fence, found there by Robinson, was the fence built on the original line as surveyed by Mullett between lots 51 and 54, and had stood there for over 15 years, and testimony was given in the case tending to show this fact.

Mr. Beamer was called by defendants, and testified that this fence was built three or four years before he went into possession of lot 54, which was in 1871. This was denied by plaintiff, who offered testimony tending to show that Beamer built this fence after he went into possession, in October, 1871. It was contended by defendants that the testimony showed that Mullett's plat originally placed the ground line between outlots 51 and 54 where defendants' line stands, and that such line has existed and been recognized as the true line between said lots for more than 15 years prior to the bringing of these suits.

The testimony being closed, the defendants' counsel requested the court to charge the jury as follows:

"1. Under the pleadings and evidence in this case, your verdict must be for the defendants.

"2. If you believe the evidence of Mr. Robinson, that the line as established by him has been treated as the line for over 30 years, then such line must govern, and your verdict must be for the defendants.

"3. If you can find from the evidence in this case just where the old line was located by John Mullett, even though there was a shortage between his lines, and he did not give the full distance called for by the plat, yet such line must govern.

"4. If you believe from the evidence that Mullett originally located the line between outlots 51 and 54 where Robinson and McLaughlin now find it, even though there is a shortage in the outlots from the amounts called for by the plat, your verdict must be for the defendants.

"5. In determining whether Mullett located the line between outlots 54 and 51 where Robinson fixes the line, the jury are to consider the relative situation of the old landmarks or fences.

"6. If, at the time Robinson made his survey, there were landmarks standing which were obliterated when Jerome and Daly made their subsequent survey, it is proper to take this into consideration in determining which is more likely to reproduce the old line established by Mullett.

"7. If defendants and Mrs. Watson occupied up to the line fence built by Watson for over 15 years before plaintiff brought this suit, believing and treating the same as the line, then your verdict must be for the defendants.

"8. If Mrs. Watson erected the line fence over 15 years before the bringing of the suit, then, under the evidence, plaintiff cannot recover.

"9. If the jury find for plaintiff, they must find compensation for defendants' improvements. The fact that the houses, cut in two, would not, in such shape, be valuable, does not absolve plaintiff from paying the damages. There is no claim here for any but compensation to defendants. If cutting the houses in two would render the part left of no value, defendants' shall be compensated for costs, of the whole house."

The court refused to give defendants' requests in charge to the jury except as covered by the general charge. The defendants had a right to have their requests 2 to 8, inclusive, submitted to the jury. We do not think they were sufficiently covered by the general charge.

The court charged the jury as follows:

"It appears, gentlemen, that, some years ago, Mrs. St. Aubin, who owned the property in question, outlot 54, deeded that lot to her daughter Mrs. Watson, and outlot 51 to another daughter, Mrs. Beaubien. These lots adjoin; 54 is north of 51. It also appears that Mrs. Watson sold the south part of her lot 54 to certain parties, who platted it, and they then sold to the defendants in this case; but the plaintiff, Mrs. Beaubien, claims that, in making said plat, it lapped over onto her lot 51, to the extent of 14.2 feet. Therefore the question for you to decide is, did that plat, made by the parties who bought of Mrs. Watson, overlap onto Mrs. Beaubien's lot 51 to the extent of 14.2 feet? If this plat did overlap onto Mrs. Beaubien's lot, then your verdict must be for the plaintiff, because, of course, Mrs. Watson could not sell Mrs. Beaubien's land; neither could the person to whom she sold plat a part of Mrs. Beaubien's lot 51 without her consent.

"To decide this question, we must first determine where the dividing line between 54 and 51 was (that is the first step) according to the original plat of the St. Aubin farm. We must find where it is before we can discuss this question, and, having found that, if you can, the second question is whether the owners of outlots 54 and 51, and not third parties,—whether the owners of outlots 54 and 51 * * * have agreed upon the boundary line, and if they have changed that dividing line between the said lots."

Further on in the charge, the court says:

"Now, the original Mullett plat shows that the dividing line is where the plaintiff claims it should be; that is, the original plat."

This was certainly misleading to the jury. They were given to understand by this charge that the fact had been established by proof that the original Mullett plat fixed the true line between these lots at the point where the plaint-

iff claimed.    This was the very point in issue, and that claim was disputed by the defendants; and the testimony of Robinson and McLaughlin tended strongly to show that the true line between these lots was where the defendants claimed it to be, and in accordance with which they built their cottages.

There seems but little dispute between the surveyors as to measurements.    Their only difference is as to where the true line is located; and this difference seems to arise from the fact that each take different starting points for their respective surveys.    Jerome and Daly take Fremont street as their starting point, and for the reason, as testified by Mr. Jerome, "that all surveyors agree that that is one of Mullett's lines." Using Fremont street, then, as the starting point, "because surveyors have agreed upon it," and without any guide except the courses and distances as marked upon the Mullett plat, with no fixed monuments, and ignoring all the old fences, Jerome and Daly find the north line of 51 overlaps lot 54 as claimed by defendants, 14.2 feet.    Robinson and McLaughlin made their surveys and measurements from Ferry street, and found what they claimed to be the true line between lots 54 and 51 where the defendants claimed it to be.

We are unable to find any evidence in the case that warranted Jerome and Daly to fix a starting point at Fremont street.    It is assumed by them as correct because surveyors agreed that it is one of Mullett's lines.    There is no evidence, however, that it is a line established by the Mullett survey. On the contrary, the testimony of Robinson shows a shortage north of Fremont street, and between that and Gratiot road, of 20 feet, and a shortage between Fremont street and lot 54 of some 12 or 13 feet.    Defendants' second to sixth requests, inclusive, called the attention of the jury directly to these facts, and should have been given.

The court, in another portion of the charge, said :

"But at the same time, gentlemen, there are certain rules

of law which govern surveyors, and the first rule is: Where boundary lines are fixed and known, and unquestionable monuments, such as rivers and regularly laid out streets, and these things, fix the boundaries, they will govern, even though they differ from the courses and distances in the deed, for the reason that courses and distances are more likely to be mistaken than if you should say, 'This lot is bounded by the river Detroit,' and another by the river Rouge, and something else by something that is fixed. If there are no such fixed boundaries, then the true line must be found by courses and distances in the deed, and therefore I charge you, if the surveyors cannot find any fixed monuments or boundaries for the land in dispute, the lines should then be governed by the original plat and surveys in the deeds appearing in the case, namely, the Mullett plat in this case; and if you believe, by actual measurement from Gratiot street north to Fremont or Farnsworth street,—if you find that such given point is practically located with and in accordance with the courses and distances, and that there remains enough distance to give to all the outlots in the tract north of lot 50, as platted, their proper length, and in doing so the disputed line can be located on the ground as claimed by plaintiff, the jury should find such a verdict. And I further charge you that the actions of the owners of the lots upon the other side of the street, in locating their boundary lines, can have no binding effect upon them, or upon their grantees, provided they did not consent to it."

This charge took from the jury all consideration of the questions of the fences as assisting in the determination of the true line fixed by the Mullett survey.

It appeared by the testimony of Robinson and McLaughlin that these outlots, at an early day, were inclosed by fences, so that, in laying out and widening St. Aubin avenue, they were compelled to climb them, and that these old fences marked the boundaries of these outlots, and it appeared that on the very line which defendants claimed to be the true line between lots 51 and 54 a fence had been built more than 20 years before, as had other fences north of Fremont street. This fence between lots 54 and 51 had been removed, and another put in its place. It was therefore a question of great

importance where these old fences stood, and how they corresponded with the fences on the opposite side of St. Aubin avenue.

The line between lots 54 and 51 was a continuation, according to the Mullett plat, of the line between lots 52 and 53, on the east side of St. Aubin avenue; and, if the old fences on each side of that avenue were continued through on the same straight line, it was some evidence to assist the surveyors in finding the true line fixed by the Mullett survey, as would also the other cross-fences found there. Jerome and Daly were unable to find any fixed monuments, and entirely ignored the fences, but fixed their line by courses and distances, as marked on the Mullett plat, and assumed they were correct in making Fremont street the starting point. Robinson and McLaughlin laid great weight on the old fences as evidence of the true lines fixed by the Mullett survey, and in this we think they were correct, and the court should have so instructed the jury. ·

This Court said in *Diehl v. Zanger*, 39 Mich. 605:

"The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would have located these lots, but how the original stakes located them. * * * · The city surveyor, should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks set by Mr. Campau; and, if those were discovered, they must govern. If they are no longer discoverable, the question is where they were located, and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known. * * * As between old boundary fences and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are."

From Mr. Robinson's testimony it appears that his effort in making the survey and fixing the lines was to reproduce the old survey, and for that purpose he used the old fences

as he remembered them for the last 20 to 30 years, and Mr. McLaughlin pursued the same course; and the court should have instructed the jury that these old fences were to be considered as strong evidence in fixing the lines as located by the Mullett survey; and if this fence had stood there for some 20 or 30 years, as claimed by defendants, it should be taken as indicating the true line between these lots,—at least until some other evidence is given than that of plaintiff's witnesses in this case, who assume a starting point at Fremont street "because the surveyors agree upon it as the true line." *Joyce v. Williams,* 26 Mich. 332; *Diehl v. Zanger,* 39 Id. 601; *Baker v. McArthur,* 54 Id. 139 (19 N. W. Rep. 923); *Wilmarth v. Woodcock,* 66 Id. 331 (33 N. W. Rep. 400).

In determining whether the Mullett survey fixed the line where the defendants claim it, the jury should have been directed to consider the relative situation of the old fences, not only upon the west side of St. Aubin avenue, but also upon the opposite side; and if, at the time when Robinson made his survey, these old fences were standing, and had been removed before the survey made by Jerome and Daly, it would be proper for the jury to take this fact into consideration in determining which survey would be the most likely to reproduce the lines as located by the Mullett survey.

Another and more serious difficulty is, however, in the way of plaintiff's recovery. From her own showing, made by witnesses Jerome and Daly, we do not think there was any evidence to go to the jury establishing the line between lots 51 and 54 where plaintiff claims. There is no evidence fixing Fremont street as a true line under the Mullett survey.

It will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, without some proof of its being a true line located and fixed by the original survey, and under which parties may have acted and made valuable improvements. There is no contro-

versy in the case as to the location of this line, if it is assumed that Fremont street was a correct point of departure, and one fixed and established by the Mullett survey; and from this point, following the courses and distances marked on the Mullett plat, and giving each lot the length shown by the plat, this line would be where these witnesses place it. But we cannot assume that Fremont street is a true starting point because surveyors have agreed upon it. Some proof must be made that this was one of the points actually fixed by the Mullett survey dividing this farm into outlots. No proof was offered in the case tending to show this fact.

The court should have given the defendants' first request to charge, that, "under the pleadings and evidence in this case, your verdict must be for the defendants."

For the errors mentioned, the judgment must be reversed, with costs, and a new trial ordered.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred.