WASSON *v.* CAMPBELL.

1. ADVERSE POSSESSION—EVIDENCE.
    In ejectment between adjacent owners of lots in a platted subdivision, evidence *held,* insufficient to prove title in defendant by adverse possession of disputed triangular strip.

2. APPEAL AND ERROR—EJECTMENT—SURVEYS.
    On appeal in action of ejectment from decision of trial court, sitting without a jury, whose opinion failed to analyze the testimony except to comment on the small value of the land in controversy, examination of record *held,* to require decision to follow a determination of the correctness of surveys made by the surveyors for the respective parties.

3. BOUNDARIES—EJECTMENT—EVIDENCE—SURVEYS—MONUMENTS.

> In ejectment to determine boundary between adjacent owners of lots in subdivision, where decision turns upon correctness of surveys made by surveyors for respective parties, that corresponding to plaintiff's claim is accepted where based upon known boundaries and iron stake monuments of original surveys rather than surveys which assume a starting point but are without evidence that such assumed starting point was a point definitely fixed by the original survey of the plat, especially where defendant's survey would result in maladjustment of each lot in the subdivision and cause plat to overlap land not owned by grantor-platters.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 10, 1936. (Docket No. 33, Calendar No. 38,424.) Decided October 5, 1936. Rehearing denied November 9, 1936.

Ejectment by Charles M. Wasson against Donald Francis Campbell for possession of land. Judgment for defendant. Plaintiff appeals. Reversed.

*Smedley & Stribley* (*George M. Clark* and *W. C. Kane*, of counsel), for plaintiff.

*Charles B. Cross*, for defendant.

TOY, J. This is a line fence case. Plaintiff is the owner of the westerly 30 feet of lot 4, lot 5, and the easterly 25 feet of lot 6 of Birch Brook (subdivision), in the township of Fruitland, county of Muskegon. Defendant is the owner of lots 7, 8, and the west one-half of lot 6 of such Birch Brook subdivision. Both parties obtained their respective titles from the same grantors, namely, Walter S. Gerts and wife. The defendant obtained title by warranty deed dated November 29, 1912, and the plaintiff by warranty deed dated September 18, 1920.

The subdivision in question was platted in 1905 and according to the recorded plat its boundaries

consisted of the section line on the west, the ⅛ section line on the east, White lake on the north, and Whitehall road on the south. The east and west boundaries of the plat were also the east and west boundary lines of government lot 4; the east line of the subdivision being the dividing line of government lots 3 and 4.

In the dispute before us the location of the dividing line of lot 6 of the subdivision is the issue of fact to be determined. Plaintiff brought this action of ejectment claiming that defendant had entered a portion of his, plaintiff's, premises, to-wit:

"A part of the easterly twenty-five feet (25') of lot 6 of said above described premises."

The property in dispute is a triangular strip of land starting from a point on White lake and running 330 feet in length and having a width of 18.8 feet on Whitehall road at the rear of the lot. The circuit judge heard the case without a jury and found that plaintiff had not established his case by a preponderance of evidence and accordingly entered judgment for defendant. The circuit judge, in his opinion, made no attempt to analyze the testimony except to comment upon the fact that the strip of land in question was of such little value as not to be worth quarreling over. Many witnesses were heard for each party, including two surveyors who testified for plaintiff and who fixed the dividing line of lot 6 in the location here claimed by plaintiff, and two surveyors who testified for defendant and who fixed the dividing line of said lot in the position here claimed by him.

Defendant also offered testimony attempting to prove title to the disputed strip of land by adverse possession. We find no merit in such claim. The

plaintiff was in possession of the disputed portion of the lot from 1920 until a period between the fall of 1930 and the spring of 1931 when defendant erected a fence on the line of the land claimed by him and inclosed the strip of land here in dispute. Prior to the erection of the fence the plaintiff had erected an outside toilet on the disputed premises, trimmed the trees thereon, sowed grass seed thereon, kept the leaves raked therefrom, and generally assumed possession thereof, all of which was done during the years preceding the time of the erection of the fence, without any claim of right or title to such property by defendant. Defendant has failed to prove title by adverse possession.

We have carefully examined the record and analyzed the testimony therein contained and we find therefrom that our decision must follow a determination of the correctness of the surveys made by the surveyors for the respective parties. As we have said before, the surveyors testifying for defendant fixed the disputed lot line to be that claimed by defendant, and the surveyors produced by plaintiff fixed the lot line to be that claimed by him. We are constrained to accept the dividing line of lot 6 as found by plaintiff's surveyors. We are urged to this decision because the surveys as testified to by the surveyors for plaintiff are based upon known boundaries and monuments rather than surveys which assume a starting point but are without evidence that such assumed starting point was a point definitely fixed by the original survey. See *Beaubien* v. *Kellogg,* 69 Mich. 333.

Attached to the plat of the subdivision as recorded, there is a certificate of the surveyor of such plat, to the effect that permanent monuments, consisting of iron stakes, had been planted at points marked by

a dot within a circle as thereon shown. Plaintiff's surveyors based their survey upon many of such iron stakes. However, many others were found to be missing. Plaintiff's surveyor Shepard not only relied upon the iron stakes found, but resurveyed the entire plat, using .as a starting point the ⅛ section line which was, as shown by the plat, the easterly boundary of the subdivision. There is ample testimony in the record, given by witnesses for both parties, to sustain the location of the easterly boundary or ⅛ section line by surveyor Shepard. This relocation of such section line was made by following an old line fence, which, it was testified by many witnesses, marked such section line. Based upon such starting points plaintiff's surveyor resurveyed and outlined the entire Birch Brook subdivision and his survey fixes the dividing lines of the respective lots within the plat, practically as set forth in the original plat. Plaintiff's surveyor Williams made a survey of the premises in question without any knowledge on his part of the survey of Shepard, and, after having done so, and at plaintiff's request, both surveyors checked with each other, and found their measurements to be practically the same. Both of these surveys placed the dividing line of lot 6 in the position here claimed by plaintiff.

Defendant's surveyors made their survey based upon points within such subdivision designated by wooden stakes. They claim that the locations of the wooden stakes were pointed out to them by the witness Lunsford who claimed to them that such stakes marked the boundaries as originally surveyed. The plat does not show the location of these wooden stakes to have been part of the original survey. Therefore we can give little credence to this survey made by defendant's surveyors which assumes the

placing of wooden stakes as monuments wherein the plat calls for iron stakes as such. If the theory of defendant's surveyors was accepted, not only would all the other lot lines within the subdivision be maladjusted but would, by progression, result in moving the lot line of each lot in the subdivision until lot number 1 would overlap 18.8 feet on adjoining property, which adjoining property is not within the original plat and which was at the time of platting, owned by parties other than the grantors. That this result would obtain was conceded by defendant's surveyors in their testimony.

We are convinced that the starting points used by defendant's surveyors were inaccurate, or at least their accuracy is open to speculation, and therefore cannot be used as a basis of fixing the disquieted boundary between the two portions of lot 6, especially when the acceptance of such survey will disturb the lines of all the lots in the platted subdivision. *Reimers* v. *Quinnin*, 49 Mich. 449. On the other hand, we accept that of surveyor Shepard, based as it is upon old boundary lines and upon original monuments. *Hanlon* v. *Ten Hove*, 235 Mich. 227 (46 A. L. R. 788) and cases therein cited.

The judgment of the circuit court is reversed and judgment entered for plaintiff, with costs of both courts.

North, C. J., and Fead, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred. Potter, J., did not sit.