GREGORY *v.* DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

1. BOUNDARIES—RAILROAD RIGHT OF WAY—QUESTION OF FACT—EVIDENCE.

In dispute between railroad company and owner of adjacent city lot as to location of boundary of railroad right of way, evidence *held*, to sustain trial court's finding of fact that center line of right of way was midway between westbound and eastbound tracks, instead of in the middle of westbound track, as claimed by defendant railroad; especially where measurement therefrom to site of a line fence that had existed for upwards of 30 years accorded with width of half of right of way as specified in deed under which defendant claimed title, boundary line, as so definitely marked by the fence, was acquiesced in and property was occupied by respective property owners for many years and defendant's testimony is based upon monuments of uncertain location and upon the accuracy or inaccuracy of descriptions and boundaries of other parcels.

2. SAME—RECOGNIZED BOUNDARIES MAY NOT BE DISTURBED BY NEW SURVEY.

Where starting points, such as section corners or quarter posts, cannot be found, purchasers have a right to rely on stakes planted or fences built which have long been recognized as indicating lot lines, and no subsequent survey establishing a starting point should be allowed to unsettle such boundaries.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted June 9, 1936. (Docket No. 110, Calendar No. 38,968.) Decided October 5, 1936. Rehearing denied November 9, 1936.

Bill by John N. Gregory and wife against Detroit, Grand Haven & Milwaukee Railway Company to restrain the erection of a fence on plaintiffs' property. Cross-bill by defendant against plaintiffs to

quiet title to land. From decree for plaintiffs, defendant appeals. Affirmed.

*Robert D. Heitsch,* for plaintiffs.

*H. V. Spike* and *F. V. Slocum (Patterson & Patterson,* of counsel), for defendant.

North, C. J. This is an injunction suit by which plaintiffs seek to have defendant railway company enjoined from erecting a fence as a boundary of its right of way upon land to which plaintiffs claim title as contract vendees. Defendant by cross-bill asks that its title be cleared to the disputed strip of land. The relief sought by plaintiffs was decreed in the circuit court and defendant has appealed.

Plaintiffs are the contract purchasers of the southerly part of lot 1 of Tompkinson's Addition, in the city of Pontiac. This parcel of land is located on the northeasterly side of defendant's right of way. Both plaintiffs and defendant through mesne conveyances claim ownership of their respective lands from a common grantor, William D. Tompkinson. In 1851, which was prior to the time Tompkinson recorded his plat, he deeded to defendant's predecessor a railway right of way ''100 feet in width or 50 feet from the center of the track of said railroad each way.'' Plaintiffs purchased their property under a land contract in 1922, and the description is with reference to the Tompkinson plat which was recorded in 1858. Witnesses for plaintiffs testified to the existence of an old fence for upwards of 30 years and to the use by plaintiffs' predecessors in title of the land up to this fence line as a hog yard and garden. None of these witnesses claimed to know who built this fence or the circumstances under which it was constructed. It was removed by plain-

tiffs, with consent of the defendant, at a time when plaintiffs were grading their property. At the time plaintiffs took up the matter of removing the fence and of grading the land, no claim was made by the railroad company that the fence was not located on the boundary line. Plaintiffs claim ownership of the land to the line of this old fence.

Defendant's conflicting claim is based upon its contention that its right of way, 100 feet in width, is fixed by the center of its westbound tracks. The record discloses that at the time defendant's predecessor received the grant of the right of way the railroad consisted of a single line of main tracks; but about 1911 the railroad was double tracked. Defendant offered testimony tending to show that in this operation of installing double tracks its westbound line of tracks was not changed. It is therefore contended that the center of its right of way as established by deed coincides with the center line of defendant's westbound tracks. If this were true, in the absence of other controlling circumstances, defendant's contention as to the correct location of the disputed boundary line would be established. But plaintiffs claim that defendant's right of way, as actually located, is such that its center line coincides with a line midway between defendant's westbound tracks and its eastbound tracks. The record contains testimony tending to sustain the contention of each of the respective parties. The issue presented is one of fact which, as above noted, was determined by the trial judge in favor of plaintiffs. A careful review of the record satisfies us that such determination was correct.

Decision herein does not turn upon the question of adverse possession; but instead the controlling issue is the determination of the fact as to where

the boundary line is actually located. As above stated, defendant offered testimony tending to show that its present westbound tracks are in the location of its original main tracks. Defendant also offered testimony of surveyors, the probative force of which depended largely upon monuments of uncertain location and the accuracy or inaccuracy of descriptions and boundaries of other parcels. Neither of these lines of testimony is very satisfactory or very convincing. But it is plaintiffs' theory that if the center line of defendant's right of way is located midway between its eastbound and its westbound tracks, the portion of defendant's right of way on the side adjacent to plaintiffs' property, if measured to the line of the old fence, is substantially the width specified in the conveyance under which the defendant claims. This circumstance, supplemented by a definitely marked boundary line in which the respective property owners acquiesced for many years, and in accordance with which they occupied their respective pieces of property, as shown by the testimony, is quite conclusively convincing that plaintiffs' contention is correct. There is direct conflict in the testimony of the surveyors produced by the respective parties, and that in behalf of one of the litigants is about as persuasive as like testimony in behalf of the other. As bearing upon the probative force of defendant's contention that the center line of its westbound track coincides with the center line of its right of way, it may be noted that one of the surveyor witnesses, produced by defendant, testified that at a point not very remote from the property in question the center line of defendant's westbound tracks does not coincide with the center line of its right of way. As before noted, we think the issue of

fact presented was correctly decided by the trial judge.

"It is the contention of the learned counsel for the complainant (for defendant in the instant case) that the deeds (to plaintiffs' property) were made with reference to the original plat and monuments, and they must control. If the location of the original monuments and stakes was conclusively established, there would be some force in this contention. But the judge expressly finds that it was not, and that, in the absence of such location, the fences and other monuments, erected and established about that time, and ever since recognized, are better evidence of the actual location of the lot lines than are surveys based upon uncertain monuments." *Breakey* v. *Woolsey,* 149 Mich. 86.

"Where starting points, such as section corners or quarter posts, cannot be found, purchasers have a right to rely on stakes planted or fences built which have long been recognized as indicating lot lines, and no subsequent survey establishing a starting point should be allowed to unsettle such boundaries." *Pere Marquette R. Co.* v. *Tower Motor Truck Co.,* 222 Mich. 190.

The decree entered in the circuit court is affirmed, with costs.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.