## HURD v. HINES.

1. EJECTMENT—BURDEN OF PROOF.
    The burden of proof rests on the plaintiffs in an action of ejectment to establish their claims as set forth in their declaration and they must make out a prima facie case indicating the sufficiency of their title in order to prevail.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur, Ejectment § 104.
[2] 18 Am Jur, Ejectment § 20.
[3] 3 Am Jur, Appeal and Error § 567 *et seq.*
[4] 8 Am Jur, Boundaries § 99.
[5] 8 Am Jur, Boundaries § 72 *et seq.*
[6] 8 Am Jur, Boundaries §§ 83, 105.

2. SAME—PLAINTIFF MUST RELY ON STRENGTH OF OWN TITLE.
   A plaintiff in an action of ejectment must rely on the strength of his own title and not the weakness of defendant's title.

3. APPEAL AND ERROR—RECORD.
   The Supreme Court must take the record in a case as it finds it.

4. BOUNDARIES—SURVEYS—MONUMENTS.
   Surveys of property, made for the purpose of establishing boundary lines, must be based on proper monuments.

5. SAME—USE OF PROPERTY BY ALL PARTIES CONCERNED.
   Finding of trial judge that the parties to a boundary dispute had all used the property in controversy negatives the existence of any agreement as to a fixed boundary line.

6. SAME—FINDING OF TRIAL COURT—ESTOPPEL.
   Judgment of trial court not finding that defendants' asserted ownership of the disputed parcel, based on adverse possession by themselves and their predecessors in title, may not be regarded as a finding that plaintiffs were estopped to maintain their present action.

Appeal from Huron; Quinn (Timothy C.), J., presiding. Submitted April 10, 1956. (Docket No. 54 Calendar No. 46,641.) Decided June 4, 1956.

Ejectment by Albert Hurd, E. J. Hurd, Stephen Hurd and Violet Potter against Laurence F. Hines, Frances Hines, Oscar Bills, Jennie Slack and Robert Ritchie. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Maurice C. Ransford* and *Frederick S. Beach,* for plaintiffs.

*Thomas R. McAllister,* for defendants.

CARR, J. Plaintiffs are the owners of land on Saginaw Bay in Huron county. Contiguous thereto on the north is property owned by defendants Hines. The boundary line between said properties has never been definitely established. Claiming that the de-

fendants had encroached on their property and were withholding possession thereof from them, plaintiffs on April 17, 1953, instituted ejectment proceedings. The defendants answered the declaration, denying plaintiffs' claims and asserting ownership in defendants Hines of the property in dispute. The cause was tried before the circuit judge without a jury and judgment entered in favor of the defendants. From such judgment plaintiffs have appealed.

The lands in question were formerly owned by William and Norman Dutcher and their wives. Under date of July 1, 1907, said owners, as grantors, conveyed to Peet W. Selee and others a piece of land described as 2 rods in breadth and 120 rods, 16 inches, in length. It is conceded that the purpose of the conveyance was to permit the establishing of a roadway. It is further agreed that said road as used at the present time is not identical with the property described in the deed, the center line of which was specifically set forth. The north, or northeast, terminal of the road was, according to the deed, marked by an iron stake 3/4 inches in diameter and 27 inches in length, located with reference to the southeast corner of lot 3, section 28, township 16 north, range 9 east. The description of said roadway becomes important in the instant case because the conveyances under which plaintiffs and defendants Hines claim refer to the stake above mentioned.

In June, 1910, William Dutcher and wife and Norman Dutcher and wife conveyed to Peet W. Selee land that defendants Hines now claim to own. It was described as:

. "Commencing at a point on the west side of a certain road deeded by first parties hereto to Peet W. Selee and others,     *     *     *     said point being one rod west of an iron stake standing three and thirty one-hundredths—3-30/100 chains west and six and twenty-nine one-hundredths—6-29/100 chains north,

from the southeast corner of lot three—3—Sec. 28 township sixteen—16—north of range nine—9— east. Thence running in a southwesterly direction along the west side of said road three hundred —300—feet. Thence west to Saginaw Bay. Thence north to a point directly west of the stake heretofore mentioned. Thence east to the place of beginning."

Defendants Hines base their claim of record title on the above mentioned deed and mesne conveyances. They purchased under a land contract in 1946, and received a deed in 1952.

The Selee deed under which defendants Hines claim was followed in January, 1912, by a conveyance from the Dutchers to Levi T. Hurd and Albert H. Lockwood, under whom plaintiffs claim by inheritance and grant. The land conveyed was described as follows:

"Commencing at a point on the west side of a certain road deeded by first parties hereto to Peet W. Selee and others, * * * said point being three hundred feet south of a point one rod west of an iron stake standing three and 30/100 chains west and six and 29/100 chains north from the southeast corner of lot three section twenty-eight township sixteen north, of range nine east, said starting point being the southeast corner of a lot sold to Peet W. Selee; from said point running south two hundred feet; thence west to Saginaw Bay; thence north two hundred feet to the Selee lot; thence east to place of beginning."

It will be noted that in each of these conveyances reference is specifically made to a point on the west side of the road that was the subject matter of the conveyance of 1907, which point is stated as being one rod west of a certain iron stake. On the trial of the cause in circuit court plaintiff Albert Hurd testified that in the fall of 1951 he undertook to locate the iron stake in question and finally unearthed a

pail filled with stones in which had been placed an iron stake 17 inches in height. He did not remove said stake but placed beside it a metal pipe that came within a few inches of the surface of the ground. Apparently the excavation was then refilled. In the spring of 1952 he engaged a surveyor for the purpose of ascertaining the boundary lines of plaintiffs' property, particularly the line between them and the property of defendants Hines. He directed the attention of the surveyor to the spot where the pipe had been placed the previous fall. Apparently the surveyor did not undertake to investigate the iron stake that Hurd had located, but assumed that its position was as stated to him. On the plat that he prepared for use on the trial he indicated that he had started his survey with the 27-inch iron stake referred to in the 1907 conveyance of the road.

Plaintiffs' case rests on the testimony of the surveyor who described in some detail the work that he did in preparing the plat of plaintiffs' property. He testified that he proceeded from the position of the pipe pointed out to him by plaintiff Albert Hurd to the line of section 28 but discovered no marker there. He also stated that he did not locate the corner of any section in his measurements. The following excerpt from his testimony suggests the difficulties with which he was confronted.

"*Q.* You didn't establish any starting point?

"*A.* That's where the road comes.

"*Q.* If you want to get down to the section line of 28, that would have to be the southwest corner of the southwest quarter of the southwest quarter because the northwest corner of the southwest quarter of the southwest quarter wouldn't be the same?

"*A.* No.

"*Q.* Then your entire survey was practically a guess, isn't that right, on the basis of the records?

"*A.* Taking the information as you can glean it.

from the old records, it is my idea it is correct. You take this out and plat it out and then you come over there and the northwest corner of southwest quarter of southwest quarter isn't on the section line; it's about 1,300 feet off.

"*Q.* Then your measurements start east on the section line between sections 28 and 29; 17.30 chains?

"*A.* Yes, today they have property on the outside of that road.

"*Q.* You can't testify with any accuracy here that your survey is correct on the basis of the records?

"*A.* I can testify to the records that are available, that my survey is as good as any other.

"*Q.* But you can't testify that your survey is accurate from the records you have to work with?

"*A.* Because the records to start with are inaccurate you mean?

"*Q.* Yes.

"*A.* Yes, you have to take the good information and glean it from the bad.

"*Q.* In other words, the survey was strictly a guess, wasn't it?

"*A.* I don't like the word 'guess.'

"*Q.* Some other person could interpret these records entirely different and make an entirely different survey?

"*A.* That is correct. On that particular matter I would like to call the court's attention to exhibit 4, the deed from Dutchers to Hurd; the distance south, 'said point being 300 feet south of a point,' whereas actually in all rhyme and reason and everything else it shows it southwest along that road.

"*Q.* And it says south?

"*A.* Yes, in that particular description it says it's south 300 feet and it also says that is the southeast corner of a piece sold to Selee.

"*Q.* Your determination was made entirely from the road, a 2-rod road as originally laid out described in a deed in liber 89, page 482?

"*A.* After I got that road established then I established his lot.

"*Q*. In this deed in 89 of deeds page 482, exhibit 2, there's 2 stakes mentioned in here. Did you find the other stake?

"*A*. There's more than 2 mentioned. The one southwest of the corner is out in the middle of a pond.

"*Q*. That's under water?

"*A*. Which has been excavated out.

"*Q*. It's water?

"*A*. Yes, a boat well or what you wish to call it.

"*Q*. You weren't able to make any determination as to those stakes on the basis of the stakes set forth in the deed?

"*A*. No, sir.

"*Q*. You say your survey is also based upon what you determined to be the boundary lines of Rose Island plat?

"*A*. Yes.

"*Q*. Did you make any measurements from the southwest corner of section 28, or did you endeavor to locate a stake at the southwest corner of section 28 at the time you made the survey?

"*A*. That is the corner in question where I ran down to the southwest and south to the road and where they were putting the fill in the road.

"*Q*. So that you didn't find a stake?

"*A*. No, there was nothing there."

Other testimony in the case related to the use of the property during prior years, to the construction of boathouses, and to the dredging or lengthening of cuts. The trial judge determined from the proofs that a part, at least, of the property in dispute had been used as a driveway and for customer parking by the parties to the case, and by the predecessors in title of defendants Hines, that the boathouses that plaintiffs claimed had been constructed by defendants south of the property line had been erected in good faith, and that the boundary line had never been accurately located. He further concluded that the parties in interest in the 2 properties had by

conduct accepted for over 20 years a line south of the land in dispute and, further, that the plaintiffs were estopped from asserting title apparently because of testimony as to the claimed acquiescence of plaintiff Albert Hurd in the construction of the boathouses before mentioned. It may be noted in this connection that such testimony was disputed by the claim of plaintiffs that their ownership of the property was asserted on several occasions.

In order to be entitled to recover, the burden of proof rests on the plaintiffs of establishing their claims as set forth in their declaration. As stated in *Van Vleet* v. *Blackwood,* 39 Mich 728, the plaintiffs must make out a prima facie case indicating the sufficiency of their title. The doctrine was reaffirmed in *Briggs* v. *Prevost,* 293 Mich 677, 679, where it was said:

"It is elementary that to prevail in an ejectment proceeding the plaintiff must rely upon the strength of his own title, not on the weakness of defendant's title. *Ridgley* v. *Roma,* 282 Mich 682."

See, also, *Township of Pontiac* v. *Featherstone,* 319 Mich 382.

It is apparent from the opinion of the trial judge that he found plaintiffs' proofs insufficient to sustain their right to recover the property in dispute. Defendants insisted in the trial court, and renew the claim here, that the survey made by plaintiffs' witness was not shown to be accurate. Emphasis is placed on the fact that the stake discovered by plaintiff Albert Hurd, and the position of which was used as the starting point of the survey, was not located with reference to any acceptable monument. Apparently the witness recognized the importance of locating the southwest corner of section 28, referred to in the conveyances directly involved in this case, but failed to do so. Whether the boundaries of

plaintiffs' property could have been determined by relocating the corner of said section does not appear. We must, of course, take the record as we find it.

In *Beaubien* v. *Kellogg*, 69 Mich 333, which was an action of ejectment, plaintiff relied on a survey which had been made with reference to a certain street. There was, however, no evidence establishing such street as a proper starting point in fixing the boundary line in dispute. In the absence of such showing it was held that the plaintiff could not recover, and the judgment in her favor was reversed.

In *Hildie* v. *Aikman*, 239 Mich 77, plaintiffs filed suit in equity to establish boundary lines. Apparently it was the desire of the parties to subdivide certain property suitable for resort purposes. Commenting on the situation presented, it was said (p 78):

"Preliminary to subdivision must be determined the actual boundaries of the section, which boundaries are controlled by the original monuments established by the government survey if ascertainable. Surveyors, employed by the respective parties, have attempted this and failed to agree, principally because of a dispute among them as to the location of the east quarter post. If this were settled, it seems the boundaries of the lands in question could be determined without dispute."

After discussing the conflicting testimony of the witnesses, the Court came to the conclusion from the record that the original government quarter post was located as claimed by defendants and that their survey was correct. This was in accord with the findings of the trial judge. In consequence, the decree, based on the failure of the plaintiffs to sustain the burden of proof resting on them, was affirmed. The language, above quoted, may be regarded as indicating the necessity for basing surveys of property, made for the purpose of establishing boundary lines,

on proper monuments. Of like import is Gregory v. Detroit, Grand Haven & Milwaukee R. Co., 277 Mich 317. There the testimony of defendant's witnesses as to the line in dispute was based on monuments of uncertain location and upon descriptions and boundaries of other parcels.

In view of the nature of the testimony in the case at bar, we think the trial judge correctly found that plaintiffs had not established by competent proofs the right to a determination of the controversy in their favor. The survey on which they relied was based on the assumptions that the stake located by Albert Hurd in the fall of 1951 marked the northerly terminal of the roadway conveyed to Peet W. Selce and others by the deed of 1907 and that the survey of the property so conveyed was correct. Under the facts presented here such assumptions are not permissible. The stake discovered by plaintiff Hurd did not comply with the description of the marker referred to in the deed of the roadway. There is nothing in the record tending to throw light on the accuracy of the earlier survey.

It is unfortunate that the rights of the parties to the case may not be definitely fixed, but such result is not possible under the record before us. The evidence does not establish that the parties, or their predecessors in title, have at any time in the past agreed on a definite boundary line. There is no testimony tending to show that a line of such character was ever marked in any manner. The fact, as found by the trial judge, that the property was used to a certain extent by all parties concerned tends to negative the existence of any agreement as to a fixed boundary line. It is not shown by the kind or character of proof requisite under Gregory v. Thorrez, 277 Mich 197, and other decisions of like import. We think it must be said, also, that defendants' claim, raised by them in their answer, that

plaintiffs were estopped to maintain the present action is not well-founded. The showing as to the conduct and statements of plaintiff Albert Hurd is in dispute and there is no evidence that the other plaintiffs at any time recognized the claims that defendants now assert. The trial judge made no finding with reference to defendants' assertion of ownership of the disputed parcel based on adverse possession by themselves and their predecessors in title. In consequence the judgment from which plaintiffs have appealed may not be regarded as based on any finding in this respect, and defendants have not appealed.

The judgment of the trial court is affirmed, with costs of this Court to defendants.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.